James H. PRUITT, Petitioner,

v.

**REPUBLIC BANKERS LIFE INSURANCE COMPANY, Respondent.**

No. B–3594.

Supreme Court of Texas.

Feb. 21, 1973.

Rehearing Denied March 21, 1973.

**110**

Walters & Associates, James A. Walters and William F. Warnick, Lubbock, for petitioner.

Beard & Kultgen, Thomas L. Cook, Waco, for respondent.

STEAKLEY, Justice.

This suit is by the insured, James H. Pruitt, petitioner here, against respondent, Republic Bankers Life Insurance Company, to recover hospital, surgical and medical expenses incurred by his wife, Evelyn Pruitt, during a hospitalization period from June 11, 1969 until her death on June 29, 1969. The policy in question had been issued under date of May 1, 1968. Republic pleaded in defense exclusionary provisions of the policy, quoted below. Trial was to a jury whose findings were favorable to Pruitt, but the judgment of the trial court based thereon has been reversed and the cause remanded by the Court of Civil Appeals. 483 S.W.2d 686. We reverse the judgment of the intermediate court and remand the cause to that court for the reasons later stated.

The problems to be solved as the case reaches us arise from the following policy provisions and the special issues submitted to the jury with respect thereto:

"No indemnities whatsoever shall be payable under this Policy for loss or disability resulting wholly or partly, in or from, . . . (2) Sickness or disease which results in surgical operations or procedures unless the cause thereof originates more than six (6) months after this policy has been in continuous force from the date of coverage of the person insured hereunder for whom such surgery is prescribed; . . . (5) Sickness or Accidental Bodily Injury originating prior to the effective date of this Policy; . . . ."

As noted, Republic pleaded these exclusions, i. e., that chronic gastric ulcer and cirrhosis of the liver were the sickness or disease that caused Mrs. Pruitt's hospitalization and surgery, and that these originated prior to the effective date of the policy and not more than six months after the policy had been in force. The issues submitted to the jury, material to this opinion, and the findings, were these:

## SPECIAL ISSUE NO. 1[1]

Do you find by a preponderance of the evidence that Evelyn Pruitt contracted a sickness or disease more than fifteen (15) days after May 1, 1968?

Answer: "She did" or "She did not."

Answer: "She did."

## SPECIAL ISSUE NO. 2[2]

Do you find by a preponderance of the evidence that on or about June 11, 1969, Evelyn Pruitt was required to be hospitalized because of a sickness or disease contracted more than six months after May 15, 1968?

Answer: "She was" or "She was not."

Answer: "She was."

---

1. The insuring clause of the policy provides that coverage is afforded for sickness that originated after the policy had been in force for more than 15 days.

2. Republic objected to Issues 2 and 3 as improperly placing the burden of proof; and further, as to Issue 3, "that this is an improper submission because Plaintiff has the burden of negating the fact as plead by Defendant; that is that the condition for which Mrs. Pruitt was hospitalized for on June 11, 1969, either originated prior to this date of issue of the policy which is May 1, 1968, or that the condition originated six months after the issue date of the policy."

## SPECIAL ISSUE NO. 3 [2]

Do you find by a preponderance of the evidence that on or about June 11, 1969, Evelyn Pruitt underwent a surgical operation or procedure, the cause for which originated more than six months after May 1, 1968?

Answer: "She did" or "She did not," as you so find.

Answer: "She did."

## SPECIAL ISSUE NO. 8 [3]

Do you find by a preponderance of the evidence that the real and compelling cause for the hospitalization loss sought to be recovered by Plaintiff was not an ulcer or other disease that was contracted within six months from the date of issuance of the insurance policy in question?

You are instructed by the term "real and compelling cause" is meant a cause that was not contributed in whole or in part by a disease or sickness that originated within six months from the date of policy issuance, but it is not required to be shown that the excluded disease had no effect whatsoever on the hospitalization loss sought to be recovered.

Answer: "It was not" or "it was."

Answer: "It was not."

■ As before stated, the trial court entered judgment for petitioner on the jury findings. This judgment was reversed by the intermediate court upon the reasoning that "[a]n overview of the jury's findings discloses that the findings are applicable only to the exclusionary period subsequent to the date of issuance of the policy, for none of these findings cover the exclusionary period prior to May 1, 1968, the date of

the issuance of the policy." Citing *Sherman v. Provident American Insurance Company*, 421 S.W.2d 652 (Tex.1967), which holds that the burden is on the plaintiff-insured to negative policy exclusions pleaded in defense, the court held there was reversible error in the failure of petitioner to obtain separate findings that the sickness for which Mrs. Pruitt was hospitalized, and for which she had surgery, did not originate prior to the May 1, 1968 effective date of the policy, and did not originate during the additional exclusionary period of six months subsequent to the date of issuance. Notwithstanding recognition by the court that the findings in answers to Issues 1, 2, 3 and 8 were in "net effect" that the sickness resulting in the hospitalization and operation originated after November 1, 1968, it was held that the findings did not negative the exclusionary period involving sickness originating prior to the issuance date of the policy "other than by implication." It was thought that since an insured has the burden of establishing affirmatively that the loss in question was not the result of excluded risks pleaded by the insurer, and that the insurer is entitled to an affirmative submission of pleaded defensive matters, the failure here to submit issues separately embracing the multiple exclusionary periods was error even though the jury findings under the issues as submitted do in fact negative the pleaded exclusionary periods, either expressly or by implication. Our view is otherwise since the jury findings in response to Issues 2 and 3 preclude by necessary implication the existence of pre-existing causes. As before noted, an objection to Issues 2, 3 and 8 was stated in terms of the burden upon the insured as plaintiff to negative the defense of a pre-existing condition *or* a condition that originated within six months after the issue date of the policy. It is apparent that the latter was negatived by the finding (Issue 2) that

3. Republic objected to Issue 8 as "duplicitous with Special Issue No. One, Two and Three;" and as "improper. It is not a proper basis for recovery for Plaintiff as stated under the contract of insurance between Plaintiff and Defendant, in that Plaintiff has to negate the defense of a pre-existing condition or a condition that originated within six months after the issue date of policy."

**112**

the sickness or disease requiring the hospitalization of Evelyn Pruitt was contracted more than six months after May 15, 1968; by the additional finding (Issue 3) that the cause for the surgery originated more than six months after May 1, 1968; and by the still further finding (Issue 8) that the cause for the hospitalization was not an ulcer or other disease contracted within six months from the policy issuance date of May 1, 1968. We have no difficulty in saying that a sickness or disease contracted more than six months after May 15, 1968 did not pre-exist May 1, 1968, or that a cause for surgery originating more than six months from May 1, 1968 did not pre-exist such date. We therefore disagree with the conclusion of the Court of Civil Appeals that the pleaded policy exclusions were not fairly negatived under the procedural record here, together with the findings of the jury in response to the special issues as submitted.

 Having disagreed with the stated basis for the reversal of the judgment of the trial court by the Court of Civil Appeals, we examine other points there presented by Republic to determine if these warrant an affirmance on a ground not considered by the intermediate court. See McKelvy v. Barber, 381 S.W.2d 59, 64 (Tex.1964). In so doing, however, we find that among others there is one which says that the answers of the jury to Special Issues 1, 2, 3 and 8 are contrary to the overwhelming weight and preponderance of the evidence so as to be clearly wrong. This requires a remand of the cause to the Court of Civil Appeals since, as to this, the jurisdiction of that court is final. See Wood v. Kane Boiler Works, 150 Tex. 191, 238 S.W.2d 172, 178 (1951) and Ritchie v. American Surety Co. of New York, 145 Tex. 422, 198 S.W.2d 85, 91 (1947). We may not, as insisted by Republic as respondent here, consider its points before the intermediate court which were not considered there but which, if sustained, would have required a different and more favorable judgment, i. e., a rendition of judgment in its favor.

Republic has not filed a writ application from the unfavorable judgment of the intermediate court in this respect. See Isenhower v. Bell, 365 S.W.2d 354, 357 (Tex. 1963). It may be said, however, that an appellate court should give consideration to all points calling for a judgment of reversal and rendition before reversing a trial court judgment and remanding the cause. This is so for the reason that a remand is not in order if an appealing party is entitled to a judgment of reversal and rendition, except in those instances where a remand in the interest of justice is proper. In the remand we are ordering here upon reversal of the judgment of the Court of Civil Appeals that court may, of course, consider all such points of Republic as the prevailing party there even if the sustaining of such points would lead to a different judgment. See McKelvy v. Barber, *supra*.

The judgment of the Court of Civil Appeals is reversed and the cause is remanded to that court.