Opinion issued February 15, 2007 












In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00494-CV






YAHYA HASSAN, INDIVIDUALLY AND D/B/A SAFE CAB CO. A/K/A
SAFE CAB COMPANY, AND KEMAL MOHAMMED, INDIVIDUALLY
AND D/B/A SAFE CAB CO. A/K/A SAFE CAB COMPANY, Appellants


V.


GREATER HOUSTON TRANSPORTATION COMPANY D/B/A

YELLOW CAB, Appellee






On Appeal from the 281st District Court

Harris County, Texas

Trial Court Cause No. 2004-19728






O P I N I O N

 Appellees, Greater Houston Transportation Company d/b/a Yellow Cab
("Yellow Cab"), brought a trade dress (1) cause of action against appellants, Yahya
Hassan, individually and d/b/a Safe Cab Co. a/k/a Safe Cab Company, and Kemal
Mohammed, individually and d/b/a Safe Cab Co. a/k/a Safe Cab Company ("Safe
Cab"), under United States Code title 15, section 1125(a), (2) commonly known as the
Lanham Act, and Texas common law. After a jury trial, the trial court rendered
judgment granting a permanent injunction in favor of Yellow Cab and prohibiting
Safe Cab from operating any taxicab with a color scheme that predominantly used the
color yellow. On appeal, Safe Cab asserts that (1) the trial court lacked subject-matter
jurisdiction over Yellow Cab's Lanham Act claim; (2) the trial court erred in
rendering judgment for Yellow Cab because the jury did not find an element of its
Texas common-law unfair competition claim; (3) the trial court erred by giving the
jury an erroneous definition of "secondary meaning"; (4) the evidence was legally
insufficient to support the jury's finding of secondary meaning; (5) the evidence was
factually insufficient to support the jury's finding of secondary meaning; and (6) the
evidence was factually insufficient to support the jury's finding that Safe Cab's use
of the color yellow on its taxis caused a likelihood of confusion. We reverse the
judgment and remand the case for further proceedings.

BACKGROUND


 Since the 1940s, Yellow Cab has been operating yellow-colored taxicabs in the
Houston metropolitan area. Today, on an average day, there are between 700 and 800
Yellow Cab taxis servicing greater Houston each day. While Yellow Cab is the
dominant taxi company in Houston, there are about 120 other taxi companies. Thirty-six of these other taxicab companies use predominately yellow-colored taxis, but each
has a different color scheme. As far back as 1993, there were more than 20 taxicab
companies in Houston using a predominately yellow color scheme. As the name
implies, Yellow Cab's taxis are painted yellow. They have black lettering and
crossed-sword logos on the side. 

 In 2003, Safe Cab received a license to operate in the City of Houston. Its
choice of a yellow paint scheme for its taxi (3) was approved by the Transportation
Section of the City of Houston. In that same year, Yellow Cab complained to the
Transportation Section about the existence of other yellow-colored taxis, at which
point the city placed a moratorium on any further yellow-colored taxis. However,
there were still over 100 yellow-colored taxis on the streets of Houston that were not
associated with Yellow Cab. 

 Yellow Cab sent "cease and desist" demand letters to taxi companies with
yellow color schemes, demanding that they stop using yellow-colored taxis and
offering to paint their taxis another color at Yellow Cab's expense. Two taxi
companies, with a total of approximately 40 taxis, accepted Yellow Cab's offer. 
After Safe Cab refused to comply with Yellow Cab's demand, Yellow Cab filed suit
under (1) the Lanham Act, the federal statutory scheme for trademark and trade dress
infringement, and (2) a Texas common-law claim of unfair competition, contending
that its yellow-colored taxis were protectable trade dress. Yellow Cab sought a
permanent injunction enjoining Safe Cab from using yellow-colored taxis. The jury
returned a verdict in favor of Yellow Cab, and the trial court rendered judgment
permanently enjoining Safe Cab from using yellow-colored taxis. After the trial court
denied Safe Cab's motion for new trial, Safe Cab filed this appeal. 

Subject-Matter Jurisdiction


 In its first point of error, Safe Cab contends that the trial court lacked subject-matter jurisdiction over Yellow Cab's Lanham Act claim because Yellow Cab did not
prove that Safe Cab's services were used "in commerce." Yellow Cab responds that
the "in commerce" requirement of the Lanham Act is not jurisdictional, but instead
is simply an element of the cause of action, and therefore Safe Cab has waived this
argument by failing to preserve the complaint. 

 The Lanham Act provides in pertinent part:

 (1) Any person who, on or in connection with any goods and
services, or any container for goods, uses in commerce any word,
term, name, symbol, or device, or any combination thereof, or any
false designation of origin, false or misleading description of fact,
which--

 (A) is likely to cause confusion, or to cause mistake, or to
deceive as to the affiliation, connection, or association of
such person with another person, or as to the origin,
sponsorship, or approval of his or her goods, services, or
commercial activities by another person, . . . 

 . . . .

 shall be liable in a civil action by any person who believes that he
or she is or is likely to be damaged by such act.


15 U.S.C.S. § 1125(a)(1) (LexisNexis 2006) (emphasis added). 

 Several federal circuit courts of appeals have held that the "in commerce"
language is a jurisdictional prerequisite. See Starter Corp. v. Converse, Inc., 84 F.3d
592, 595 (2d Cir. 1996) (holding that use of marks was sufficiently "in commerce"
to sustain federal-question jurisdiction under Lanham Act); Ocean Garden, Inc. v.
Marktrade Co., 953 F.2d 500, 505 (9th Cir. 1991) (stating that act in commerce
triggers subject-matter jurisdiction); Rickard v. Auto Publisher, Inc., 735 F.2d 450,
453 n.1 (11th Cir. 1984) ("In actions involving unregistered trademarks, the
jurisdiction of the federal courts extends only to cases in which a false designation
of origin has been 'transported or used in commerce.'"). However, at least one circuit
court has treated the requirement as a nonjurisdictional element of the cause of action. 
See World Carpets, Inc. v. Dick Littrell's New World Carpets, 438 F.2d 482, 488-89
(5th Cir. 1971). 

 Decisions of the federal courts of appeals do not bind Texas courts, although
they are received with respectful consideration. Hayes v. Pin Oak Petroleum, Inc.,
798 S.W.2d 668, 672 n.5 (Tex. App.--Austin 1990, writ denied). Texas state courts
"are free to interpret federal law independently, though in the first instance we
typically seek guidance from among the decisions of the lower federal courts." Kiefer
v. Continental Airlines, Inc., 882 S.W.2d 496, 502 (Tex. App.--Houston [1st Dist.]
1994), aff'd, 920 S.W.2d 274 (Tex. 1996). Unless a federal statute provides for
exclusive federal jurisdiction, state courts have the authority to render binding
decisions based on their interpretation of federal law. ASARCO v. Kadish, 490 U.S.
605, 617, 109 S. Ct. 2037, 2045 (1989). 

 Unlike federal courts, in which the authority to adjudicate must be established
for each case, Texas district courts are courts of general jurisdiction, and subject-matter jurisdiction over a cause of action is presumed unless a contrary showing is
made. Dubai Petroleum Co. v. Kazi, 12 S.W.3d 71, 75 (Tex. 2000). In Kazi, our
supreme court held that the statutory requirement in that case was not jurisdictional. (4) 
Id. at 73. The court concluded that a plaintiff's failure to establish a statutory
prerequisite does not deprive the trial court of subject-matter jurisdiction over the
plaintiff's claim if the statutory prerequisite is merely a condition on which the
plaintiff's right to relief depends. Id. at 76-77. Thus, a statutory requirement may
be mandatory without being jurisdictional. Id. at 76. Compliance with
nonjurisdictional, mandatory requirements can be waived if not timely asserted. 
Univ. of Tex. Sw. Med. Ctr. v. Loutzenhiser, 140 S.W.3d 351, 359 (Tex. 2004). 
However, subject-matter jurisdiction may not be waived by the parties and may be
raised for the first time on appeal. Tex. Ass'n of Bus. v. Tex. Air Control Bd., 852
S.W.2d 440, 445 (Tex. 1993). 

 Appellant has made no showing that the "in commerce" requirement is
jurisdictional, and we do not so interpret the language of the Lanham Act. Rather,
here, as in Kazi, the right to maintain a suit for trade dress infringement goes to the
right of the plaintiff to obtain relief, not to the right of the court to entertain the suit. 
See Kazi, 12 S.W.3d at 75, 76-77. Safe Cab did not object in the trial court that the
alleged infringement of the Lanham Act did not occur "in commerce." Therefore,
Safe Cab waived its right to require Yellow Cab to prove that the alleged
infringement affected interstate commerce.

 Accordingly, we overrule Safe Cab's first point of error.

Jury Charge (5)


 In its third point of error, Safe Cab asserts that the trial court erred in
submitting an erroneous definition of "secondary meaning" in the jury charge. 
Yellow Cab first contends that Safe Cab waived this point of error because it did not
properly object. 

 The Texas Supreme Court has adopted the following test for preservation of
charge error: Did the trial court know of and overrule the substance of the complaint
at a time when the court could have, but did not, correct the problem in the charge? 
See State Dep't of Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 241 (Tex.
1992) (holding that there "should be but one test for determining if a party has
preserved error in the jury charge, and that is whether the party made the trial court
aware of the complaint, timely and plainly, and obtained a ruling."). Therefore, an
objection to a defective instruction is sufficient to preserve error, and a request using
substantially correct language is not required. Spencer v. Eagle Star Ins. Co. of Am.,
876 S.W.2d 154, 157 (Tex. 1994). 

 In this case, the proposed jury charge stated that "'secondary meaning' means
that the color at issue has acquired a meaning beyond the primary meaning, by having
become associated by use, promotion or advertising, in the public mind with the
business of YELLOW CAB." At the charge conference, Safe Cab objected to the
definition of secondary meaning, stating, 

 In addition to Question No. 1, the defense has previously submitted for
inclusion a definition of secondary meaning, additional information
regarding color; and we would ask that our definition of color--or the
portion of secondary meaning relating to color--specifically that color
may acquire secondary meaning--may have--I'm sorry--that--the
portion we have submitted previously to the Court that talks in terms of
for color [sic] to acquire secondary meaning requires in the minds of the
consuming public the color has become uniquely linked with only one
provider of the service to the exclusion of all other providers of the
service as causes confusion to its origin. We think that should be
included in the "secondary meaning" definition in Question No. 1, Your
Honor. We ask that it be included.


The trial court then stated, "Court notes your objection to the lack of inclusion of the
terminology regarding color. Court overrules said objection." The trial court clearly
understood Safe Cab's complaint and ruled on it. Therefore, we conclude that Safe
Cab preserved its complaint. 

 Yellow Cab argues, in support of the jury charge in this case, that the definition
provided by the trial court is more faithful to the Supreme Court opinion in Two
Pesos, Inc. v. Taco Cabana, Inc., 505 U.S. 763, 766 n.4, 112 S. Ct. 2753, 2756 n.4
(1992), and "accepted jury submission practice" than Safe Cab's proposed language. 

 In Two Pesos, the Supreme Court noted that secondary meaning "is used
generally to indicate that a mark or dress 'has come through use to be uniquely
associated with a specific source.'" Id. (citing Restatement (Third) of Unfair
Competition § 13 cmt. e (1990)). (6) The Court, relying its own precedent, then stated,
"To establish secondary meaning, a manufacturer must show that, in the minds of the
public, the primary significance of a product feature or term is to identify the source
of the product rather than the product itself." Id. (citing Inwood Labs., Inc. v. Ives
Labs., Inc., 456 U.S. 844, 851, n.11, 102 S. Ct. 2182, 2187 n.11 (1982)) (emphasis
added). Yellow Cab suggests that the charge given in this case is correct when
compared with the model charge in a treatise on federal pattern jury charges. That
model charge states, 

 A word or phrase that is merely descriptive can still become a trademark
if such a secondary meaning has been developed for it by usage in the
marketplace. It is not necessary for plaintiff [] to prove that all or even
a majority of the consuming public understands this secondary meaning. 
What must be shown by the evidence is that a significant number of the
consuming public have associated [term] with plaintiff [] before [date].


3A Kevin F. O'Malley, Jay E. Grenig & William C. Lee, Federal Jury
Practice & Instructions § 159.63 (5th ed. 2001). The same treatise also states that
trade dress acquires secondary meaning "when it has been used in such a way that its
primary significance in the minds of the prospective purchasers is not the [dress]
itself, but the identification of the [dress] with a single source." Id. Clearly, the latter
definition is relying on Supreme Court precedent. Two Pesos, 505 U.S. at 766 n.4,
112 S. Ct. at 2756 n.4; see also Wal-Mart Stores, Inc. v. Samara Bros., Inc., 529 U.S.
205, 210, 120 S. Ct. 1339,1343 (2000) (defining secondary meaning as occurring
"when, in the minds of the public, the primary significance of a [mark] is to identify
the source of the product rather than the product itself."). 

 The instruction given to the jury in this case did not track either the instruction
in the federal model charge or the language found in Two Pesos or Wal-Mart. The
jury charge asked only that the "color at issue has acquired a meaning beyond the
primary meaning, by having become associated by use, promotion or advertising, in
the public mind with the business of YELLOW CAB." The definitions propounded
by the Supreme Court ask for more than the "association" of a color through
advertising and other promotional activities; the correct definition requires that the
trade dress be "uniquely associated with a specific source" and "identify the source
of the product rather than the product itself." 

 We conclude that the jury charge definition strayed from the definition of
secondary meaning as set out by the Supreme Court. We further conclude that the
erroneous definition was harmful because it probably caused the rendition of an
improper judgment. See Tex. R. App. P. 41.1(a). Here, there was no evidence of a
unique association with a specific source--a specific taxicab company. There was
evidence that approximately 40 taxicab companies in Houston used a predominately
yellow color scheme and that some of those companies had operated in the City of
Houston for at least 10 years. This evidence was uncontested. The evidence also
established that Yellow Cab was, by far, the largest of these companies, having in
excess of 700 cabs on the streets of Houston daily. Therefore, it is possible that the
public may have come to associate the color yellow with Yellow Cab. However, it
is equally possible that the public is aware that not all yellow cabs are Yellow Cabs. 

 The definition in the court's charge permitted the jury to find that the color
yellow had acquired a secondary meaning if it was merely "associated by use,
promotion or advertising with Yellow Cab," as opposed to being "uniquely
associated" with only Yellow Cab (the single source). It is quite a different thing to
tell a jury it must find an association through advertising and promotion as opposed
to finding a unique association with a specific source of the product and identifying
the source rather than the product. The charge definition did not require a rigorous
enough inquiry on the part of the jury, in line with Supreme Court precedent, and
therefore the jury would probably have reached a different result had it been given the
correct definition. 

 We hold that the trial court erred in providing an erroneous definition of
secondary meaning in the jury charge and that Safe Cab was harmed by that error. 
Accordingly, we sustain Safe Cab's third point of error. 

CONCLUSION


 Because we have sustained Safe Cab's challenge to the jury charge definition
of secondary meaning, we need not reach its second point of error complaining that
there was no finding of irreparable harm--an element of an unfair competition claim. (7) 
Likewise, because Safe Cab's fourth, fifth, and sixth points of error challenging the
legal and factual sufficiency of the evidence are remand points, we need not reach 
them. 

 We reverse the judgment of the trial court and remand the case for further
proceedings. 



 Sam Nuchia

 Justice


Panel consisting of Justices Nucia, Keyes, and Hanks.


Justice Keyes, dissenting.



1. Trade dress under section 43(a) of the Lanham Act consists of the total image
of a product or service, including product features such as design, size, shape, color,
packaging labels, color combinations, graphics, or service business features such as retail
decor, architectural features, menus, restaurant layouts, styles of service, costumes, and
occasionally marketing techniques as well. 2 Anne G. Lalonde, Karen Green & Jerome
Gilson, Trademark Protection & Practice § 2A.01[1] (59th ed. 2006). 
2. See 15 U.S.C.S. § 1125(a) (LexisNexis 2006).
3. Safe Cab had only one taxi.
4. In so holding, Kazi overruled Mingus v. Wadley, 285 S.W. 1084, 1087 (Tex.
1926), which held that "where the cause of action and remedy for its enforcement are derived
not from the common law but from the statute, the statutory provisions are mandatory and
exclusive, and must be complied with in all respects or the action is not maintainable." 
Dubai Petroleum Co. v. Kazi, 12 S.W.3d 71, 76 (Tex. 2000). Thus, Kazi abolished the
jurisdictional distinction drawn in Mingus between common law and statutory causes of
action. 
5. Generally, a reviewing court must consider rendition points before considering
remand points. Tex. R. App. P. 43.3; Pruitt v. Republic Bankers Life Ins. Co., 491 S.W.2d
109, 112 (Tex. 1973). Therefore, we would usually consider Safe Cab's legal sufficiency
point of error first. However, Safe Cab did not move for a directed verdict, file a motion for 
judgment notwithstanding the verdict, or otherwise preserve its no-evidence complaint except
in its motion for new trial. See Horrocks v. Tex. Dep't of Transp., 852 S.W.2d 498, 499
(Tex. 1993) (holding that appeals court can only remand for new trial when that is only relief
asked for by parties below). Therefore, because Safe Cab asked only for a new trial, we can
only remand for a new trial. 
6. Although the federal courts of appeals' holdings are not binding on Texas
appellate courts, Hayes v. Pin Oak Petroleum, Inc., 798 S.W.2d 668, 672 n.5 (Tex.
App.--Austin 1990, writ denied), the definition of secondary meaning involves a federal
question under the Lanham Act. Therefore, we are bound by the United States Supreme
Court's holding in this area. See Sharp v. Caterpillar, Inc., 932 S.W.2d 230, 235 (Tex.
App.--Austin 1996, writ denied) (holding same). 
7. Liability for unfair competition requires a "finding of some independent
substantive tort or other illegal conduct." Schoellkopf v. Pledger, 778 S.W.2d 897, 904 (Tex.
App.--Dallas 1989, no writ). Because there was error in the jury charge submission of
Yellow Cab's trade infringement cause of action (the independent tort supporting the unfair
competition claim), we need not reach this point of error relating to unfair competition. Id.