**Opinion issued November 20, 2025**



In The

# Court of Appeals

For The

# First District of Texas

―――――――――――――――

## NO. 01-24-00335-CV

―――――――――――――――

**ROY BENT, Appellant**

**V.**

**MEDINA BENT, Appellee**

**On Appeal from the 280th District Court**
**Harris County, Texas**
**Trial Court Case No. 2024-14465**

## MEMORANDUM OPINION

This is an appeal of a family-violence protective order granted against Roy Bent, in favor of Medina Bent, under section 85.001 of the Family Code. It prohibits Roy from going near Medina, and having any direct contact or communication with her, for a period of three years. It also orders that Medina

have exclusive use and possession of the residence they lived in and the vehicle they used—and requires Roy to continue paying all the bills for both.

Roy now challenges the legal and factual sufficiency of the evidence supporting the protective order. He also contends that the trial court was biased. We affirm.

## Background

Medina and Roy lived together for two years and then married in April 2021. They lived together in Baytown, Texas. They began having marital problems in January 2024. Roy showed Medina photos and videos of himself engaging in sexual acts with another woman and told Medina—"This is what I'm doing you stupid black bitch woman. You need to leave my house." Around the same time, Medina had breast reconstructive surgery after completing treatments for breast cancer.

On Friday, February 23, 2024, Medina asked Roy for money to repay a friend who had loaned her money to replace the tires on her car. Roy became angry and an altercation between the two ensued. Roy told Medina, "You stupid bitch, black woman, you bitch." He then showed her naked pictures of another woman and told Medina that he and the other woman would do things together sexually that Medina would not do. He also shot a vase with an air rifle.

2

Medina told Roy to "go outside and smoke" if you need to smoke. She explained that he smoked marijuana daily, as many as six times per day. Roy responded, "Get out of my face," grabbed her by the hair, threw her on the ground, kicked her, and stepped on her. Medina testified that she was so scared she peed on herself and started to run to the restroom. Roy, however, grabbed her by her hair, threw her on the ground and kicked her in the breast. And he tried to yank the ring off her finger.

On cross-examination, Medina testified that:

(Medina): He grabbed my hair, he threw me to the ground, he lifted me and then choked me around my shoulder and then on my upper breasts.

. . . .

So first he grabbed me by my hair and then threw me to the ground, and then he lifted me from the ground and pulled me up (by my hair).

. . . .

And then immediately he choked me and then threw me against the wall. While he was choking me, he told me, "We Jamaicans are not scared of anybody and I was in jail prior to this."

. . . .

Okay. So after he threw me on the ground, I was trying to lift myself but then I had to grab on him to get up but again, I peed on myself and then I rushed and went to the bathroom.

. . . .

3

Once I run [sic] to the bathroom, he grabbed me out of the bathroom and he pulled me (by my hair).

(Trial court): Okay. And he choked you?

(Medina): Yeah.

(Trial court): I'm nosey.

(Medina): He did choke me.

Medina further testified that she was able to get away and lock herself in the bedroom. She told Roy that she had called the police, and he left the house.

Medina had a friend pick her up. After talking to her friend, Medina decided to call the police. The police report contained what Medina told them:

Upon arrival I made contact with Medina Bent, B/F 04/23m, who advised that last night, 02/23/24, at approximately 2230 hours, she and her husband, Roy Bent, B/M 12/03/76, had been in an argument that had turned physical. Medina was from Ethiopia and was struggling with understanding and speaking with officers. Medina utlllzed [sic] a friend over the phone to help her explain what had taken place. Medina advised that Roy was angry with her because she had asked for money for her tires. Medina stated Roy became angry and began pushing her around and then grabbed her by the throat pushing her into the room. Medina stated that Roy did this numerous times and she could not breathe. Medina stated that Roy then grabbed her by the hair and began dragging her around yelling at her that she was a useless bitch and demeaning her. Medina stated she was able to push Roy away and was able to lock the door securing her away from Roy. Medina stated she then pretended to be on the phone with police which caused Roy to run away from the house and leave in his vehicle. Medina also stated something about Roy having a gun, an air rifle, that he had brandished and pointed at her claiming he was going to kill her. Medina stated that Roy discharged this air rifle in the house numerous times before leaving the residence. I did not see any signs of damage specifically from the air rifle.

4

The police report also states:

I checked Medina's neck and throat area and observed no signs of injury at all. Medina described Roy had grabbed her possibly five different times on the neck and throat choking her during the altercation. I found it odd that Medina had zero visible injuries corroborating her story.

The day after the incident, Roy admitted to police that he destroyed Medina's personal property and threw her possessions around the house. At trial, Medina provided photographs of the chaos and destruction. Roy denied any physical contact with Medina, and he denied choking her.

Medina continued staying with friends, moving from house to house and relying on them to provide her with money when she needed it. She testified that Roy would not allow her to work outside the home, and she had no money of her own.

A few days later, Medina texted Roy and told him she needed the car to go to a doctor's appointment. He replied, "Go to hell." A friend took her to retrieve the car after Roy left for work.

Medina's doctor's appointment was with the breast reconstruction surgeon, who documented "some mild bruising on the right upper chest[.]" She also noted "some bruises on her left arm and back on the right side." Medina reported to the doctor that Roy "beat her," and she was concerned that perhaps he had caused an injury to her recovering breast because it was sore. Medina and the doctor "had a

5

lengthy discussion concerning her safety and following up with her police report and a restraining order against her husband. The patient reports she is seeing a lawyer today."

Medina saw an attorney later that day and decided to seek a protective order against Roy.

**Sufficiency of the Evidence**

Roy challenges the sufficiency of the evidence supporting that protective order. First, he contends that the evidence is legally insufficient to support a three-year protective order. Specifically, that there were no extenuating circumstances requiring a protective order in excess of two years because he had no prior conviction for an offense against a family member, nor did he commit felony assault.

Next, Roy contends that the trial court's finding that he committed family violence, i.e., a felony assault, is against the great weight and preponderance of the evidence. Because sustaining a legal-sufficiency challenge would require rendition, we address it first. *See Pruitt v. Rep. Bankers Life Ins. Co.*, 491 S.W.2d 109, 112 (Tex. 1973).

## A. Standards of Review

We review the grant of a family-violence protective order for legal and factual sufficiency using the same standards that we use in evaluating the

6

sufficiency of the evidence following a jury verdict. *Hollimon v. Williams*, No. 01-22-00414-CV, 2023 WL 4710895, at \*4 (Tex. App.—Houston [1st Dist.] July 25, 2023, pet. denied) (mem. op.). When, as here, a party who does not have the burden of proof at trial challenges the legal sufficiency of the evidence, we consider the evidence in the light most favorable to the prevailing party, indulging every reasonable inference in that party's favor and disregarding contrary evidence unless a reasonable factfinder could not. *Id.* (citing *City of Keller v. Wilson*, 168 S.W.3d 802, 827 (Tex. 2005)).

We may not sustain a legal sufficiency, or "no evidence" point, unless the record demonstrates (1) a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence conclusively establishes the opposite of the vital fact. *Gabel v. Gabel-Koehne*, 649 S.W.3d 590, 599 (Tex. App.—Houston [1st Dist.] 2022, no pet.) (citing *City of Keller*, 168 S.W.3d at 810).

If more than a scintilla of evidence exists to prove a vital fact, the evidence is legally sufficient, and we will overrule the issue. *Haggar Clothing Co. v. Hernandez*, 164 S.W.3d 386, 388 (Tex. 2005). There is more than a scintilla of evidence if the evidence "rises to a level that would enable reasonable and fair-

7

minded people to differ in their conclusions." *Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004) (quoting *Merrell Dow Pharm., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)).

When a party attacks the factual sufficiency of an adverse finding on an issue on which he did not have the burden of proof, he must demonstrate that the adverse finding is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Hollimon*, 2023 WL 4710895, at *4. In conducting a factual-sufficiency review, we examine, consider, and weigh all evidence that supports or contradicts the fact finder's determination. *Id.*

"It is the fact finder's role to resolve conflicts in the evidence, and we may not substitute our judgment for that of the fact finder." *Id.* at *5. After considering and weighing all the evidence, we will set aside the order only if the evidence is so weak, or the finding is so against the great weight and preponderance of the evidence, that it is "clearly wrong and unjust." *Boyd v. Palmore*, 425 S.W.3d 425, 429 (Tex. App.—Houston [1st Dist.] 2011, no pet.).

### B. Governing Law

At the close of a hearing on an application for a family-violence protective order, a trial court must grant a protective order if it determines that family violence has occurred. TEX. FAM. CODE § 85.001(b)(1) (setting out required findings and orders for issuance of protective order). The court may render a

8

protective order that is effective for a period that exceeds two years if the court finds that the person who is the subject of the protective order committed an act constituting a felony offense involving family violence against the applicant or a member of the applicant's family or household, regardless of whether the person has been charged with or convicted of the offense. *See id.* § 85.025(a-1)(1).

**C. Legal-Sufficiency Analysis**

Here, the trial court made the following findings:

> The Court, having examined the pleadings and declaration of Medina Bent, and hearing the evidence, finds that Medina Bent and Roy T. Bent, Jr. are members of the same family, more specifically, spouses and intimate partners pursuant to Texas Family Code § 71.003 and 18 U.S.C. § 921(a)(32).

> The Court finds that Roy T. Bent, Jr., has committed family violence—assault, criminal mischief, and sexual harassment. The Court finds that the following protective orders are for the safety and welfare and in the best interest of Medina Bent and are necessary for the prevention of family violence.

According to Roy, the evidence is legally insufficient to warrant a three-year protective order because none of the trial court's family-violence findings— assault, criminal mischief, or sexual harassment—are felonies. *See id.* §85.025(a-1)(1). We disagree.

A misdemeanor assault may be elevated to a felony in two ways relevant to this case.[1] First, an assault against a spouse may be a third-degree felony if the defendant has a prior conviction for an offense against a member of the defendant's family or household. *See* TEX. PENAL CODE § 22.01(a)(1), (b)(2)(A) (providing elements of assault and degrees of offense); TEX. FAM. CODE § 71.003 (defining family). Second, an assault against a spouse may be a third-degree felony if committed by intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of a family member by applying pressure to the person's throat or neck or by blocking the person's nose or mouth. TEX. PENAL CODE § 22.01(a)(1), (b)(2)(B).

It is undisputed that Roy did not have any prior convictions for family violence. But there was more than a scintilla of evidence to show that Roy

---

[1] Here, the trial court's family-violence assault finding omits the word "felony." When a trial court makes no finding on *any* element of a ground of recovery or claim, then we cannot presume that the trial court's judgment or appealable order is supportable on any implied findings. But if there is a finding *on at least one element* of a ground of recovery or claim—then the omitted unrequested element, when supported by evidence, will be supplied by a presumption in support of the judgment or appealable order. *See* TEX. R. CIV. P. 299 (emphasis added). Roy did not request an additional finding on the missing "felony" element of family-violence assault, nor does he challenge the trial court's failure to make such an additional finding. *See Vickery v. Comm'n for Lawyer Discipline*, 5 S.W.3d 241, 255-56 (Tex. App.—Houston [14th Dist.] 1999, pet. denied) ("[A] request for additional findings is in the nature of an objection"). Thus, the omitted element of the family-violence assault will be presumed if the evidence in the record supports such a finding.

committed a third-degree felony assault against Medina by choking her. Medina testified at trial that Roy choked her during the assault. There was evidence in the record that, the day after the event, Medina told police that, during the assault "Roy became angry and began pushing her around and then grabbed her by the throat pushing her into the room. Medina stated that Roy did this numerous times and she could not breathe."

Even though the trial court did not specify how Roy committed "assault," there is legally sufficient evidence of third-degree felony assault by choking Medina. *See Hernandez v. State*, 556 S.W.3d 308, 327 (Tex. Crim. App. 2017) (holding that manner and means of committing assault should not be included in hypothetically correct jury charge and should be disregarded in legal-sufficiency analysis). Thus, based on the record, we presume that the omitted "felony" element of the "family violence-assault" finding supports the trial court's family-violence protective order. *See* TEX. R. CIV. P. 299; TEX. FAM. CODE §85.001(d).

We overrule issue one.

### D. Factual-Sufficiency Analysis

Next, Roy contends there is factually insufficient evidence that he committed family violence. He asserts that "Medina's story on the stand was inconsistent and police officers found Medina lacked physical evidence at the time of the incident."

Roy argues that Medina's testimony at trial changed from being grabbed by the hair, to being grabbed around the chest, to being grabbed by the arm. And she did not mention details about being choked until questioned on cross-examination. Roy further asserts that Medina is not credible because the police did not charge Roy with assault and noted in their report that they "found it odd that Medina had zero visible injuries corroborating her story." In sum, Roy maintains that Medina's testimony is simply not credible and is against the great weight and preponderance of the evidence.

We begin by noting that the factfinder is the sole arbiter of witness credibility. *In re J.S.*, 584 S.W.3d 622, 634 (Tex. App.—Houston [1st Dist.] 2019, no pet.). In a bench trial, the trial judge is the factfinder who weighs the evidence, resolves evidentiary conflicts, and evaluates witnesses' credibility. *In re R.J.*, 579 S.W.3d 97, 117 (Tex. App.—Houston [1st Dist.] 2019, pet. denied). The testimony of a single witness is sufficient to support a felony charge. *See Shah v. State*, 403 S.W.3d 29, 35 (Tex. App.—Houston [1st Dist.] 2012, pet. ref'd).

Here, the trial court implicitly found Medina's testimony credible, and we do not revisit that finding. Additionally, there was other circumstantial evidence to corroborate portions of Medina's testimony. Medina consistently claimed that she had been choked, both to police the day after the event and again at trial.

12

Specifically, Medina told police that Roy "grabbed her by the throat" several times and that "she could not breathe."

By the time that she visited the doctor—four days after the event—there was visible evidence to corroborate some of her testimony. She had bruises on her back, lip, and arm, which the doctor photographed. The violent nature of the encounter can be inferred by Roy's conduct the next day when he destroyed Medina's property, threw it around the house, and told her to "go to hell" when she asked for her car to go to the doctor. Medina's testimony that Roy fired an air soft rifle was corroborated by photographic evidence of broken glass at the scene.

That Medina had no bruises on her throat does not prove that no choking occurred. Physical injury is not an element—all that is required is that Roy "imped[ed] the normal breathing or circulation of the blood of [Medina] by applying pressure to [her] throat or neck." *See* TEX. PENAL CODE § 22.01(a)(1), (b)(2)(B); *see also Dowling v. State*, 608 S.W.3d 896, 900 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (concluding evidence sufficient for conviction under Penal Code 22.01(b)(2)(B) and considering expert testimony that "85% of people who have been strangled had not sustained a sufficiently visible enough external injury that could be documented by photograph") and *York v. State*, 833 S.W.2d 734, 736 (Tex. App.—Fort Worth 1992, no pet.) (determining evidence sufficient

13

to show bodily injury for assault even in absence of physical evidence based on testimony that defendant choked victim cutting off her breath).

Thus, based on our review of the record before us, we cannot conclude that the evidence of a felony assault by impeding breath is against the great weight and preponderance of the evidence.

We overrule issue two.

### Bias of the Trial Court

Lastly, Roy asserts that "[t]he trial court's discretion should be given less deference because its bias against Roy was so pervasive that it precluded an impartial analysis of the evidence." Roy points to questions by the trial court to Medina about her breast-reconstruction surgery and statements the trial court made "scolding" Roy about not treating Medina "like a lady" when he showed her evidence of his sexual encounters with other women. Roy also points to this exchange when the trial court rendered its verdict:

> Sir, take me at my word, I don't want this woman harassed at all. You are going to treat her better than you have ever treated her. I'm talking about from the first day you saw her. If you thought she was the most beautiful woman in this world, because she is a beautiful woman, you're going to treat her twice as good as that. And you're going to take care of her. Because if you don't, her attorney is going to file a motion for enforcement and it will only be heard by me and I don't plan on going anywhere, sir. You treat this woman right. If you ain't never treated her right before, you're going to treat her right now.

14

## A. Governing Law

Parties have a right to a fair and impartial trial. One of the fundamental components of a fair trial is a neutral and detached judge. *Metzger v. Sebek*, 892 S.W.2d 20, 37 (Tex. App.—Houston [1st Dist.] 1994, writ denied); *see also Ellason v. Ellason*, 162 S.W.3d 883, 887 (Tex. App.—Dallas 2005, no pet.) ("All parties have a right to a fair and impartial trial before a neutral judge."). "In the absence of clear proof to the contrary, we presume a trial judge is impartial and unbiased." *Place v. McCoy*, No. 01-20-00186-CV, 2021 WL 3500989, at *5 (Tex. App.—Houston [1st Dist.] Aug 10, 2021, no pet.) (mem. op.). In that regard, a trial court has broad discretion to conduct a trial and may express itself in exercising this discretion. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 240–41 (Tex. 2001).

Remarks made by the judge "during the course of a trial that are critical or disapproving of, or even hostile to, counsel, the parties, or their cases, ordinarily do not support a bias or partiality challenge"—nor do "expressions of impatience, dissatisfaction, annoyance, and even anger" establish bias or partiality. *Id.* at 240 (quoting *Liteky v. United States*, 510 U.S. 540, 555–56 (1994)). Rather, reversible bias or partiality is shown if the judge's conduct showed "a deep-seated favoritism or antagonism that would make fair judgment impossible." *Liteky*, 510 U.S. at 555.

Judicial rulings alone are rarely sufficient to demonstrate judicial bias or impartiality. *See Dow Chem.*, 46 S.W.3d at 240. Indeed, "[i]t is only in the rarest circumstances . . . that judicial rulings demonstrate the degree of favoritism or antagonism necessary to show that a fair and impartial trial was not possible." *Ellason*, 162 S.W.3d at 887; *In re E.M.*, No. 02-18-00351-CV, 2019 WL 2635565, at \*3 (Tex. App.—Fort Worth June 27, 2019, no pet.) (mem. op.) ("Allegations that a judge has put his or her thumb on the scale should not be made simply because a party disagrees with the judge's rulings.").

Accordingly, we will only reverse a judgment on the ground of improper conduct or comments by the judge if we find (1) judicial impropriety was in fact committed and (2) probable prejudice to the complaining party. *Metzger*, 892 S.W.2d at 39. The complaining party bears the burden of showing harm to warrant reversal. *See Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 667 (Tex. 2009) (citing TEX. R. APP. P. 44.1(a)).

### B. Preservation

To preserve a complaint for appellate review, a party must present to the trial court a timely request, objection, or motion that states the specific grounds for the desired ruling, if not apparent from the request's, objection's, or motion's context. TEX. R. APP. P. 33.1(a)(1)(A). There is a limited exception to the preservation rules for certain "fundamental" errors, including "those instances in

16

which error directly and adversely affects the interest of the public generally, as that interest is declared by the statutes or Constitution of our State." *Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 577 (Tex. 2006).

Although not framed in terms of fundamental error, the Texas Supreme Court has recognized that a party need not object in the trial court to preserve a claim of judicial bias if the conduct or comment is not curable. *See Dow Chem.*, 46 S.W.3d at 241 (stating objection not required to preserve claim of judicial bias if "the conduct or comment cannot be rendered harmless by proper instruction"). "This limited, narrow, and rare exception to the preservation-of-error requirements in civil cases essentially requires a harm analysis—the error probably caused the rendition of an improper judgment—to determine if the error was incurable and, therefore, not subject to waiver." *In re L.S.*, No. 02-17-00132-CV, 2017 WL 4172584, at *16 (Tex. App.—Fort Worth Sept. 21, 2017, no pet.) (mem. op.) (internal quotations omitted). In other words, "if a judge's bias and prejudice as shown on the face of the record were harmful, thereby depriving a litigant of his important constitutional right to a fair trial with an impartial fact-finder and resulting in an improper judgment, then a party's failure to object does not waive the complaint." *Id.*

**B. Discussion**

Here, none of the complained-of statements rise to the level of a due-process violation, nor do they demonstrate bias on the face of the record. The questions about Medina's breast-reconstruction surgery do not reflect on Roy at all and appear to indicate a sincere curiosity by the trial court about the procedures.

And the statements made about Roy treating Medina "like a lady" were made during the rendition of judgment and were comments on the state of the evidence. Specifically, the trial court was scolding Roy about the evidence that he showed Medina videos of himself having sex with another woman. Such remarks made during the sentencing or judgment must be evaluated in the context of the trial. *See Garrett v. State*, 693 S.W.3d 490, 499–500 (Tex. App.—Houston [14th Dist.] 2023, pet. ref'd) (holding that trial court comments calling defendant "a predator" not evidence of bias because "it was only after hearing the evidence that the trial court made the challenged comments"). As such, the comments do not reflect a bias against Roy that existed before the trial court heard the evidence in the case.[2]

---

[2] We note that the trial court did not confine its "scolding" to Roy. At rendition, when discussing the removal of Roy's property from the home in which Medina was living, the trial court stated to Medina:

> Now listen to me well, momma, he might not take his tool boxes. He might not take his lawn mower. He might not take, you know, the stuff that's in his man cave. Shut that door and leave it alone,

We overrule issue three.

## Conclusion

For all of the reasons above, we affirm the trial court's family-violence protective order in all things.


Terry Adams
Chief Justice

Panel consists of Chief Justice Adams and Justices Morgan and Dokupil.

---

okay. Because it's not yours. And I don't want it torn up, okay? You're going to do him better than he did you. You understand? Because that's what a lady with class would do. You're not going to tear up his things, okay?