Reversed and Remanded and Memorandum Opinion on Remand filed April 1,
2008








Reversed
and Remanded and Memorandum Opinion on Remand filed April 1, 2008.

 

 

In The

 

Fourteenth Court of
Appeals

____________

 

NO. 14-02-00874-CV

____________

 

EQUISTAR CHEMICALS, LP, Appellant

 

V.

 

DRESSER-RAND COMPANY, Appellee

 



 

On Appeal from the 11th
District Court

Harris County, Texas

Trial Court Cause No. 2000-37203

 



 

M E M O R A N D U M   O P I N I O N   O N   R E M A N D

This is a double appeal on remand from the Texas Supreme
Court.  Equistar Chemicals, LP, sued Dresser-Rand Company for damages Equistar
incurred in connection with the failure of components manufactured by Dresser
and installed and serviced by Dresser at Equistar=s chemical plant. 
Prior to trial, the trial court granted a partial summary judgment limiting the
elements of damages for which Equistar could recover.  At the conclusion of
trial, a jury found in favor of Equistar on all submitted theories of recovery,
and the trial court entered judgment for Equistar in the amount of $3,510,725.








In our original opinion, we reversed the trial court=s judgment based
on application of the economic loss rule and remanded for a new trial.  Equistar Chems., L.P. v. Dresser-Rand
Co., 123 S.W.3d 584,
586-92 (Tex. App.CHouston [14th Dist.] 2003) (AEquistar I@), rev=d, 240 S.W.3d 864 (Tex. 2007) (AEquistar II@).  The Texas Supreme Court subsequently
reversed and remanded our opinion, finding that the economic loss rule argument
had not been preserved in the trial court.  Equistar II,  240 S.W.3d at 867-69.  The key issues remaining for determination
on remand are (1) whether the trial court properly limited the elements of
damages that Equistar could recover, and (2) whether the evidence was factually
sufficient to support the verdict.  Additionally, Equistar has filed a motion
to voluntarily dismiss its warranty claims with prejudice.  We grant the motion
to dismiss the warranty claims and reverse and remand all remaining claims for
a new trial.

Factual and Procedural Background








Dresser manufactured, installed, and serviced two charge
gas compressors in operation at Equistar=s Channelview,
Texas ethylene plant.  The impeller component of one of the compressors failed
twice in 1999, each time causing extensive damage to the compressor itself and
to adjacent plant parts.[1] 
Equistar sued Dresser seeking to recover repair costs as well as additional
damages, including the cost of replacing lost ethylene production, obtaining
additional feedstock, and expediting repairs.  Prior to trial, Dresser filed a
motion for summary judgment, arguing principally that Equistar=s recoverable
damages were governed by a limitation of liability provision between the
parties.[2] 
Dresser specifically asserted that damages should be limited to the costs of repairing
the compressors.[3] 
The trial court agreed, granted a partial summary judgment, and subsequently
permitted the jury to consider only repair costs in assessing damages.  Five
theories of liability were submitted to the jury:  negligence, manufacturing
defect, design defect, marketing defect, and breach of warranty.  The jury
found for Equistar on each theory, and apportioned liability 80% to Dresser and
20% to Equistar.  The jury further determined that $3,641,210 would fairly and
reasonably compensate Equistar for the cost of repairing the compressors. 
Based on the jury findings and a calculation of prejudgment interest, the trial
court awarded Equistar $3,510,725.  Both sides appealed.

In its first appeal to this court, Equistar attacked the
partial summary judgment on the ground that Dresser had failed to conclusively
establish that a limitation of liability applied to the occurrences forming the
basis of the suit.  Because of our
resolution of Dresser=s appellate issues, neither we nor the
supreme court in its opinion reached Equistar=s arguments as
appellant.  See
generally Equistar II, 240
S.W.3d 864; Equistar I, 123 S.W.3d 584.  Equistar now raises the same
issues on remand.[4]








In its first appeal, Dresser challenged the final judgment
awarding damages to Equistar on the grounds that (1) Equistar=s claims are all
barred by applicable statutes of limitations, (2) the evidence is legally
insufficient to support the jury=s verdict, and (3)
the evidence is factually insufficient to support the jury=s verdict.[5] 
In connection with its limitations arguments, Dresser further argued that the
economic loss rule limited Equistar to recovery under its warranty theory and
that the warranty theory was barred by the applicable statute of limitations. 
We agreed with this argument in regard to damage to the compressors themselves
(and attendant business interruption and other additional damages); however, we
found the economic loss rule inapplicable to damage to adjacent parts.  Equistar I, 123 S.W.3d at 586-92.  We
further found that the statutes of limitations were no bar to Equistar=s tort claims and
that legally sufficient evidence supported the jury=s findings
thereon.  Id. at 591.  Accordingly, we reversed the trial court=s judgment and
rendered a take‑nothing judgment on Equistar=s claims stemming
from damage to the compressors themselves.  Id. at 592.  We further
remanded Equistar=s tort claims stemming from damage to property
other than the compressors because there was no evidence in the original trial
segregating the amount of damage to that other property.  Id. at 591-92.

In its opinion, the supreme court held that Dresser failed
to preserve its economic loss rule argument in the trial court.  Equistar II, 240 S.W.3d at 868.  However, the
supreme court agreed with our holdings that the evidence was legally sufficient
to support the jury=s findings on Equistar=s tort theories
and that those claims were not barred by statutes of limitations.  Id.
at 868.  Accordingly the supreme court remanded for consideration of Dresser=s factual
sufficiency challenges and Aany additional issues raised by the
parties.@  Id. at
868-69.








On remand, Dresser urges that both its limitations and
legal sufficiency arguments are still at issue.  In our original opinion, we
disposed of these arguments as without merit.  Equistar I, 123 S.W.3d at 591.  In fact, we
were required to address these issues (limitations and legal sufficiency) in
our original opinion because they are Arender issues@ as opposed to Aremand issues.@  See, e.g.,
Pruitt v. Republic Bankers Life Ins. Co., 491 S.W.2d 109, 112 (Tex. 1973) (A[A]n appellate
court should give consideration to all points calling for a judgment of
reversal and rendition before reversing a trial court judgment and remanding
the cause.@).  Had we found merit in Dresser=s limitations or
legal sufficiency arguments, we would have rendered judgment favoring Dresser
rather than remanding to the trial court.  Additionally, it should be pointed
out that in its opinion, the supreme court treated our original opinion as
having disposed of Dresser=s limitations and legal sufficiency
claims.  Indeed, the court stated: Awe agree with the
court of appeals= conclusions that (1) legally sufficient
evidence supported the liability findings, [and] (2) Equistar=s tort claims were
not barred by limitations.@  Equistar II, 240 S.W.3d at 868.  Thus, Dresser=s issues on remand
are limited to its attacks on the factual sufficiency of the evidence.

Partial Summary Judgment

In its appeal, Equistar challenges the trial court=s grant of partial
summary judgment limiting the elements of damages on which Equistar could
recover to the costs of repair.  In its motion for summary judgment, Dresser
asserted that the additional damages sought by Equistar are barred under either
(1) a limitation of liability contained in a 1998 document signed by the
parties, (2) a limitation of liability contained in a Dresser order
acknowledgment form sent in response to an Equistar purchase order form, or (3)
some combination of both.  In its order granting partial summary judgment, the
trial court stated that Asaid motion should be GRANTED as to the
limitations on Plaintiff=s claim(s) for all damages, including
consequential, incidental and indirect damages, other than those plead [sic]
and specifically allowed pursuant to the contract.@ 








The parties signed a document entitled ANegotiated Terms
and Conditions@ in 1998.  Dresser maintains that the parties
expressed an intent in this document to merge all of their prior agreements
into the agreement evidenced by that document itself.  Equistar, on the other
hand, insists that the document was not intended to be a contract by itself but
was instead a set of pre-negotiated terms to be included in future contracts
between the parties.








As movant on a traditional summary judgment, Dresser had to
establish that there is no genuine issue of material fact in order to prevail
on its motion.  See Tex. R. Civ. P.
166a(c); SAS Inst., Inc. v. Breitenfeld, 167 S.W.3d 840, 841 (Tex. 2005)
(citing State Farm Fire and Cas. Co. v. Vaughan, 968 S.W.2d 931, 932
(Tex.1998), and Nixon v. Mr. Prop.  Mgmt. Co., 690 S.W.2d 546, 548‑49
(Tex. 1985)).[6] 
The primary goal in interpreting a contract should be to ascertain and give
effect to the parties= intent as expressed in the contract.  Seagull
Energy E & P, Inc. v. Eland Energy, 207 S.W.3d 342, 345 (Tex. 2006). 
Intent must be gleaned from the contract as a whole, and no single provision
taken alone will be given controlling effect.  See SAS Inst., Inc., 167
S.W.3d at 841  (quoting Coker v. Coker, 650 S.W.2d 391, 393 (Tex.
1983)).  AIf the written instrument is so worded that it can be
given a certain or definite legal meaning or interpretation, then it is not
ambiguous and the court will construe the contract as a matter of law.@  Id.
(quoting Coker, 650 S.W.2d at 393).  However, if the language of the
document is susceptible to two or more reasonable interpretations, an ambiguity
exists, and the contract cannot be interpreted as a matter of law solely from
its own terms.  See Am. Mfrs. Mut. Ins. Co. v. Schaefer, 124 S.W.3d 154,
157 (Tex. 2003).

In general, a Amerger clause@ is a contractual
provision mandating that the written terms of the contract may not be varied by
prior agreements because all such agreements have been merged into the new
document.  IKON Office Solutions, Inc. v. Eifert, 125 S.W.3d 113, 125 n.
6 (Tex. App.CHouston [14th Dist.] 2003, pet. denied).  Such clauses
memorialize the parties= intent to invoke the Amerger doctrine.@  Fish v. Tandy
Corp., 948 S.W.2d 886, 899 (Tex. App.CFort Worth 1997,
pet. denied).  Under the merger doctrine, prior or contemporaneous agreements
between the same parties, concerning the same subject matter, are absorbed into
a subsequent agreement.  See Texas A & M Univ.‑Kingsville v.
Lawson, 127 S.W.3d 866, 872 (Tex. App.CAustin 2004, pet.
denied); Fish, 948 S.W.2d at 898; see also Hubacek v. Ennis State
Bank, 159 Tex. 166, 317 S.W.2d 30, 31 (1958) (explaining merger rule).  The
intent of the parties is paramount in determining whether merger occurs.  Lawson,
127 S.W.3d at 872; Fish, 948 S.W.2d at 898.








As set forth below, we find that the 1998 document is so
forward looking and so ambiguous as to certain terms that Equistar has at least
raised a fact question as to whether the parties intended to merge all their
prior agreements into an agreement evidenced by the document itself.  To begin
with, the document=s title, ANegotiated Terms
and Conditions,@ sounds like exactly what Equistar says it
is:  a set of terms to govern future dealings.  Although the document contains
a boilerplate integration clause, interpreting this clause as merging all
previous agreements presents at least two problems.  First, while the clause
states that no provisions of the agreement, including those relating to the
price or nature of the work to be performed, can be changed except on Equistar=s written Change
Notice form, the document itself contains no provisions regarding price or the
nature of the work.  Second, the very same integration clause precludes looking
at prior agreements to fill in those blanks: AThe written terms
of this Contract constitute the entire agreement between the parties . . . .@  Thus, Equistar=s insistence that
these provisions were simply the result of negotiations for terms for future
contracts (which would include the terms from the 1998 document but also fill
in price and nature of performance terms) is a reasonable interpretation of the
document.

While Dresser argues that the language quoted above
regarding the Aentire agreement between the parties@ means that this
document governs all dealings between the parties, the merger doctrine itself
is not so limiting.  Frequently, a contract containing a merger clause is
limited to a particular service or facility, and parties may conceivably have
multiple contracts concerning different subject matter, each with its own
merger clause.  See generally Lawson, 127 S.W.3d at 872 (AUnder the merger
doctrine, prior or contemporaneous agreements between the same parties,
concerning the same subject matter, are absorbed into a subsequent agreement.@); Cont=l Cas. Co. v. Fina
Oil & Chem. Co., 126 S.W.3d 163, 174 (Tex. App.CHouston [1st
Dist.] 2003, no pet.) (holding earlier agreement was not merged into subsequent
agreement containing merger clause because the two agreements pertained to
different subject matters).

Additionally, the 1998 document is replete with prospective
language and contains almost no retrospective language.  Phrases such as Ashall be,@ Aany order
accepted,@ and Ato be delivered or performed@ are common
throughout the document, suggesting that the terms were to be incorporated in
future contracts and were not intended to govern all prior dealings.  The
statement that ACONTRACTOR has had . . . the ability to
make inspections,@ can also be reasonably interpreted as
prospective, suggesting that at the time of contracting, the contractor is
already familiar with conditions at the facility and thus cannot in the future
claim ignorance thereof.








Regarding Aperformance of work,@ the agreement
states:  AContractor warrants that its work when performed and
services when rendered will meet all specific requirements, if any, of this
agreement, and will be done in a good and workmanlike manner.@  Not only is this
statement prospective in nature, but it also references the possibility that
specific performance requirements may (or may not) be included in the
agreement.  This clause further supports Equistar=s contention that
these ATerms and
Conditions@ were negotiated for inclusion in future agreements
between the parties governing specific goods and services.

Equally important is what the document does not say.  Other
than the general statements in the merger clause discussed above, the document
includes no reference to any prior work, prior agreements, price terms, or
performance terms.  Dresser contends that Equistar, upon taking over from
Lyondell, wanted to merge all the prior agreements that Lyondell had entered
into.  It is at least debatable whether Equistar would have done so in such a
forward-looking document, omitting any terms of price or performance and
omitting any express mention of the prior agreements.  Consequently, Equistar
has raised at least a fact issue regarding whether the 1998 document expresses
an intent to merge all prior agreements between the parties concerning the
Channelview plant impellers.  The trial court therefore erred if it based its
partial summary judgment on Dresser=s contention that
the 1998 document constitutes a merger agreement between the parties.








Dresser additionally contended that the 1998 document
represented Equistar=s release of all claims based on Dresser=s prior work.  In
order to be entitled to a summary judgment on this assertion, Dresser was
required to conclusively demonstrate that the 1998 document constituted an
agreement to discharge duties or obligations Dresser owed to Equistar and that
Equistar=s claims relating
to the impeller failures were clearly within the subject matter of the
agreement.  See Baty v. ProTech Ins. Agency, 63 S.W.3d 841, 848 (Tex.
App.CHouston [14th
Dist.] 2001, pet. denied).  In support of its position, Dresser again relies on
the limitation of liability provision, which states that Dresser Ashall in no event
be liable to Equistar . . . for any consequential, incidental, or indirect
damages arising out of this agreement.@  Dresser=s argument fails
for the same reasons as its merger doctrine argument.  Consequently, there is
at least a fact question as to whether the document evidences an agreement to
discharge any of Dresser=s duties or obligations to Equistar, and
whether damages to the compressor would be included in such discharge. 
Accordingly, the trial court erred if it based its partial summary judgment on
Dresser=s contention that
the 1998 document constitutes a release of Equistar=s claims.

Lastly, as an alternative to its arguments regarding the
1998 document, Dresser asserted that even if the 1998 document did not serve to
limit Equistar=s recoverable damages, a limitation of liability
provision in an acknowledgment form limited recoverable damages.[7] 
Dresser contended that a Uniform Commercial Code Abattle of the
forms@ analysis
establishes that the limitation in Dresser=s form became part
of the agreement between the parties for work done by Dresser on Equistar=s compressors.  See
generally Tex. Bus. & Com. Code ' 2.207 (governing
when additional or different terms in an acceptance become part of the contract
between two parties).  However, regardless of whether its UCC argument is
correct, Dresser failed to conclusively demonstrate that (1) all of the
relevant work done on the compressors was governed by acknowledgment forms
containing a limitation of liability, or (2) the damages claimed by Equistar
were the result of the particular work for which Dresser produced
acknowledgment forms containing a limitation of liability.  Although Dresser
included what appear to be several order and acknowledgment forms attached to
its motion, Dresser did not provide any other summary judgment evidence
connecting these forms to the work that supposedly caused Equistar=s damages.  These
bare forms themselves do not conclusively establish that they cover the
relevant work.  Accordingly, the trial court erred if it based its partial
summary judgment on Dresser=s Abattle of the
forms@ argument.








The trial court erred in granting a partial summary
judgment limiting the elements of damages.  We therefore sustain Equistar=s first issue. 
Because our decision results in the necessity of a remand, we need not consider
the remainder of Equistar=s or any of Dresser=s substantive
issues.  These issues encompass no contentions that either (1) would result in
other than a remand or (2) require resolution for a remand.  Accordingly, we do
not reach them in this appeal.

Disposition

Pursuant to Texas Rule of Appellate Procedure 44.1(b), we
are not permitted to order a new trial on remand solely for determination of
unliquidated damages when liability is contested.  Tex. R. App. P. 44.1(b). 
Dresser has contested liability at every stage of trial and appeal.  See
Estrada v. Dillon, 44 S.W.3d 558, 562 (Tex. 2001) (explaining that
liability is contested in a case for purposes of applying Rule 44.1(b) if the defendant
filed a general denial in the trial court); see also Turner, Collie &
Braden, Inc. v. Brookhollow, Inc., 642 S.W.2d 160, 166 (Tex. 1982) (stating
party in double appeal contested liability issue by challenging the sufficiency
of the evidence in its appellant=s brief). 
Equistar urges us to suspend application of Rule 44.1 in order Ato expedite a
decision or for other good cause@ as permitted
under Rule 2.  Tex. R. App. P. 2.  We fail to see any reason for suspending the
clear dictate of Rule 44.1 here that would not apply in many other cases in
which a trial court decision on damages must be remanded.[8] 
We therefore decline to do so.








Furthermore, because the issues of liability, repair
damages, and additional damages are inextricably intertwined in this case, we
feel it incumbent to remand all questions of both liability and damages.  See
Tex. R. App. P. 44.1 (permitting remand of part of a judgment only if that part
is separable without unfairness to the parties); Ford Motor Co. v. Miles,
967 S.W.2d 377, 390 (Tex. 1998) (Gonzales, J., concurring) (stating that issues
of negligence and gross negligence were so inextricably intertwined that new
trial could not be fairly had upon sole issue of gross negligence for purposes
of punitive damages); Green Tree Fin. Corp. v. Garcia, 988 S.W.2d 776,
785 (Tex. App.CSan Antonio 1999, no pet.) (remanding for a Acomplete new trial@ after overruling
objection to actual damages award but sustaining challenge to award of punitive
damages).  Lastly, Equistar has filed a motion in this appeal to sever and
dismiss its warranty claim with prejudice.[9] 
We grant this motion, sever and dismiss the warranty claim with prejudice, and
remand all remaining liability and damages issues for a new trial.

We reverse the trial court=s judgment and
remand for further proceedings in accordance with this opinion.

 

 

/s/      Adele Hedges

Chief Justice

 

 

 

 

Judgment rendered
and Memorandum Opinion on Remand filed April 1, 2008.

Panel consists of
Chief Justice Hedges and Justices Anderson and Boyce.









[1]  For a more detailed description of the history of
the compressors, the 1999 failures, and the efforts to repair, please see our
prior opinion and that of the Texas Supreme Court.  Equistar II, 240 S.W.3d at 865-66; Equistar I, 123 S.W.3d 585-86.





[2]  As will be discussed in greater detail below,
Dresser=s primary argument was that the damages were governed
by a limitation of liability contained in an agreement signed by the parties in
1998.  In regard to this document, Equistar contended that it was not intended
to affect prior transactions but was instead a set of negotiated terms to
govern only future contracts between the parties.  In its motion for summary
judgment, Dresser additionally argued that the exchange of purchase order and
order acknowledgment forms between the parties imposed a limitation of
liability applicable to the damages alleged in this case.  In relation to this
contention, Equistar argued that Dresser failed to conclusively establish that
the relevant forms carried a limitation of liability clause.  Equistar did not
file its own motion for summary judgment seeking interpretation of any of these
documents as a matter of law.





[3]  The limitation of liability clause in the 1998
document read as follows:

 

A.  CONTRACTOR shall in no event be liable to EQUISTAR
or any successor for any consequential, incidental, or indirect damages arising
out of this Agreement or any breach thereof, including but not limited to
damages resulting from loss of use, profits, revenue, interest, or goodwill;
work stoppage; impairment of other goods; shutdown or non-operation; increased
expenses of operation; cost of purchase of replacement power; or claims of
EQUISTAR or customers of EQUISTAR for service interruption whether or not such
loss or damage is based on contract, indemnity, tort, strict liability or
otherwise.

 

B.  The
remedies of EQUISTAR set forth herein are exclusive.  Excluding CONTRACTOR=s indemnity obligation for AInjury, Death or Damage@ herein, the total liability of CONTRACTOR with respect to the
performance or breach of this Agreement, whether based on contract, indemnity,
tort, strict liability or otherwise, shall not exceed the contract price of
such services or the part upon which such liability is based.





[4]  Equistar additionally argues that the trial court
erred in excluding its offer of proof regarding additional damages and in
refusing to submit the additional damages in the jury charge.  However, the
trial court clearly made these decisions based on its holding on the partial
summary judgment.  Accordingly, these additional arguments do not raise any
distinct issues for determination.





[5]  Dresser additionally argued in its first appeal that
Equistar=s claims were all barred by a statute of repose.  The
supreme court held that Dresser waived its statute of repose defense.  Equistar
II, 240 S.W.3d at 868.





[6]  Dresser additionally suggests on remand that the
trial court also granted a Ano evidence@ ground in its motion for summary judgment.  As
evidence of this, Dresser cites only the court=s order, wherein the court stated ADefendants= Motion for Summary Judgment and Alternative
No-Evidence Motion for Summary Judgment should be GRANTED.@  However, it is clear that the trial court did not
actually grant the no evidence portion of the motion but was only stating the
title of the motion.  As mentioned in the text above, the order itself states
that Asaid motion should be GRANTED as to the limitations on
Plaintiff=s claims for . . . damages;@ the order does not state that the motion is granted
on the no-evidence ground.

Furthermore, the no-evidence ground that
Dresser claims was granted postulated that there was no evidence to prove
causation of any damages for certain causes of action.  If granted, this ground
would have eliminated the specified causes of action, not simply limited the
damages recoverable for those claims.  Accordingly, it is clear that the trial
court did not base its grant of partial summary judgment on Dresser=s no-evidence ground; thus, the no-evidence ground
cannot be used to support the summary judgment on appeal.





[7]  The limitation of liability clause in Dresser=s acknowledgment forms were virtually identical to the
limitation of liability clause contained in the 1998 document.  The forms
attached to Dresser=s motion for summary judgment were from the 1994-95
time period.





[8]  In support of its arguments, Equistar cites Browning
Oil Co. v. Luecke, 38 S.W.3d 625 (Tex. App.CAustin 2000, pet. denied), in which the court relied upon Rule 2 in
remanding for a new trial solely on damages.  Browning is readily
distinguishable from the present case.  In Browning, the original trial
was bifurcated such that liability issues were tried to the bench and not the
jury.  Id. at 647 n.31.  The court therefore determined that remanding
liability issues for a new trial in addition to damages issues would serve no
purpose.  Id.  The trial in the present case was not so bifurcated. 
Because Browning is distinguishable in this manner, we need not discuss
whether we agree with its outcome or reasoning.





[9]  Dresser opposes the motion, suggesting that Equistar
may be attempting to circumvent a holding by this court in its original
opinion.  Equistar denies any strategic intentions but insists instead that it
merely wishes to simplify matters on appeal and on remand.  Dresser
specifically accuses Equistar of attempting to nullify our holding in our
original opinion that the relevant product for warranty purposes was the
compressor, citing Equistar I, 123 S.W.3d at 587-90.  Dresser further
postulates that the supreme court left this holding intact by not addressing
the warranty claim.  Dresser is incorrect.  The supreme court reversed our
prior judgment, which was based on an opinion holding that the statute of
limitations had run on Equistar=s warranty
claim.  Equistar II, 240 S.W.3d at 868-69; Equistar I, 123 S.W.3d
at 587-90.  Our holding on the statute of limitations as it relates to the
warranty claim was not left intact given the supreme court=s reversal of our prior judgment.