# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-03-00129-CV

**Texas A & M University-Kingsville, Appellant**

**v.**

**Grant M. Lawson, Appellee**

**FROM THE DISTRICT COURT OF TRAVIS COUNTY, 126TH JUDICIAL DISTRICT
NO. 99-01282, HONORABLE MARGARET A. COOPER, JUDGE PRESIDING**

## O P I N I O N

Texas A & M University-Kingsville (ATAMUK@) appeals from a judgment imposing liability on TAMUK for breaching a settlement agreement between it and Grant M. Lawson. TAMUK argues that the district court=s judgment should be reversed because the settlement agreement was never approved by the requisite state officials and because the settlement agreement required TAMUK employees to provide false information to members of the public. TAMUK also argues that the district court=s award of attorney fees was improper. We will affirm the judgment of the district court.

**BACKGROUND**

**History of the Underlying Settlement Agreement**

Lawson began working for Texas A & I University (now TAMUK) in 1989 as a clarinet instructor in the music department. Lawson was fired after a dispute in September 1992. Following his dismissal, Lawson sued TAMUK and several individuals for wrongful termination.[1] TAMUK and Lawson reached a settlement on October 14, 1994, under which TAMUK would pay Lawson $60,000 to dismiss his suit. The agreement stated that it was "subject to the approval of the governor and comptroller of the State of Texas" and that TAMUK would "use [its] best efforts to cause the payment to be made on or before December 14, 1994."[2] Because the state failed to make the payment in time, Lawson rescinded the agreement.

---

[1] Lawson sued TAMUK for, among other claims, a violation of the Whistleblower Act. *See* Act of May 30, 1983, 68th Leg., R.S., ch. 832, §§ 1-6, 1983 Tex. Gen. Laws 4751, 4751-53, *repealed and recodified by* Act of April 30, 1993, 73d Leg., R.S., ch. 268, §§ 1, 46, 1993 Tex. Gen. Laws 583, 609-611, *amended by* Act of May 25, 1995, 74th Leg., R.S., ch. 721, §§ 1-10, 1995 Tex. Gen. Laws 3812, 3812-14 (current version at Tex. Gov=t Code Ann. §§ 554.001-.010 (West 1994 & Supp. 2004)). The trial court sustained TAMUK=s plea to the jurisdiction with respect to some of Lawson=s claims, but denied the plea with respect to Lawson=s Whistleblower Act claim and his constitutional claims for equitable relief.

[2] TAMUK argues that two statutes required that this settlement be approved by the attorney general, comptroller, and governor. *See* Act of May 27, 1993, 73d Leg., R.S., ch. 1051, art. V, § 65(2), 1993 Tex. Gen. Laws 4518, 5364; Act of May 27, 1993, 73d Leg., R.S., ch. 1051, art. I-69, A.1.1(2),

1993 Tex. Gen. Laws 4518, 4599.  We will discuss these statutes below.

On February 24, 1995, TAMUK obtained approval for the settlement and the $60,000 payment. Because Lawson had rescinded the first mediation agreement, the parties entered into a second mediation and arrived at a Release and Settlement Agreement, dated May 16, 1995, which is the subject of this lawsuit (the AFinal Agreement@). The Final Agreement provided that Lawson would dismiss his lawsuit against TAMUK with prejudice if TAMUK would perform three actions. First, TAMUK would pay $60,000 to Lawson immediately upon execution of the Final Agreement and an additional $2000 to Lawson no later than May 18, 1995.[3] Second, TAMUK would provide letters of recommendation to Lawson that would Afactually state the accomplishments and positive aspects of Lawson=s performance.@ Finally, the Final Agreement stated that TAMUK would respond to employment inquiries as follows:

> Any official inquiry made to the university regarding Lawson=s employment shall be referred to the director of personnel. The director of personnel shall respond by confirming that Lawson was employed as an assistant professor at a salary of $31,000 a year, inclusive of benefits. The director of personnel shall state that he may not provide any other information.

---

[3] The assistant attorney general who represented TAMUK during the mediation of Lawson=s lawsuit tendered a warrant in the amount of $60,000 to Lawson=s attorney at the May 16, 1995 mediation. The $60,000 payment made at the May 16, 1995 mediation was actually a product of the first mediation agreement. The warrant was dated March 7, 1995, signed by Comptroller John Sharp, and made payable to both Lawson and his attorney. The $2000 was paid to Lawson out of TAMUK funds. Following payment, Lawson dismissed his lawsuit against TAMUK with prejudice.

Although Lawson was employed as an instructor, the Final Agreement provided that TAMUK would refer to him as an Aassistant professor.@ Lawson claims that, but for his termination from TAMUK, he would have received his doctorate of music sooner, thereby making him eligible for a position at TAMUK as an assistant professor.[4] Therefore, Lawson claims that the Final Agreement Awas designed to make Dr. Lawson >whole= and, as part of that design, it effectively promoted Dr. Lawson to Assistant Professor.@

**Breach of the Final Agreement**

In 1998, Lawson applied for a position as clarinet instructor at Fort Hays State University (AFHSU@) in Kansas. Lawson represented to FHSU that he had served at TAMUK as an assistant professor. When Lawson made the list of Asemifinalists@ for the position, Dr. James Murphy, the chair of the department of music at FHSU, called the TAMUK department of music to discuss Lawson=s employment history. After leaving several messages with the department chair=s secretary, Dr. Murphy eventually spoke to the department chair. According to Dr. Murphy, the department chair said he Awould literally lose his job@ if he were to discuss Lawson=s employment with Dr. Murphy. Dr. Murphy then spoke to the personnel director, who informed Dr. Murphy of Lawson=s salary and his prior position as Ainstructor.@ Not knowing if the term Ainstructor@ was used generically or to refer specifically to Lawson=s rank, Dr. Murphy asked for clarification from the personnel director, who again stated Lawson=s salary and that he was an Ainstructor.@

---

[4] Lawson in fact received his doctorate of music from Michigan State University in May 1997.

Lawson did not receive the position at FHSU. He contacted Dr. Murphy, who related the details of his conversation with TAMUK to Lawson. Lawson contacted TAMUK, and counsel for TAMUK responded to Lawson=s inquiries and stated that TAMUK should have represented Lawson=s rank as Aassistant professor@ instead of Ainstructor.@ Lawson subsequently filed suit against TAMUK and several individuals for breach of the Final Agreement and for declaratory relief to prevent future violations. During the pendency of Lawson=s lawsuit for breach of the Final Agreement, TAMUK changed the script its personnel department would use when communicating with Lawson=s potential employers and required its personnel department to respond: AWe are currently in litigation with Mr. Lawson. Under advice from counsel, the request for verification must be in writing.@

**Procedural History**

After Lawson brought suit for breach of the Final Agreement, TAMUK filed a plea to the jurisdiction, asserting sovereign immunity. The district court denied TAMUK=s plea, and TAMUK brought an interlocutory appeal. Both this Court and the supreme court affirmed the district court=s denial of TAMUK=s plea to the jurisdiction. *Texas A&M Univ.-Kingsville v. Lawson*, 28 S.W.3d 211, 216 (Tex. App.CAustin 2000), *aff=d*, 87 S.W.3d 518 (Tex. 2002).

Lawson=s case then proceeded to trial in November 2002, over four years after the alleged breach of the Final Agreement. After a jury determined that TAMUK had breached the Final Agreement, the district court entered judgment on the verdict and awarded Lawson actual damages and attorney=s fees as found by the jury. The trial court, however, refused to grant the part of Lawson=s declaratory relief that

7

requested that the district court declare that the terms of the Final Agreement prohibited TAMUK from telling prospective employers that TAMUK was involved in litigation with Lawson.

TAMUK now appeals the district court=s judgment, arguing that (1) it cannot be bound by an agreement that was not approved by the requisite state officials, and it should have been allowed to present evidence on this issue in the trial court; (2) it cannot be held liable for violating the contract clause that requires TAMUK to state Lawson=s position as Aassistant professor@ because this clause is void as against public policy and as violative of statutes regarding public information and open government; and (3) Lawson is not entitled to an award of attorney=s fees.

In one cross-point, Lawson argues that the district court erred in denying his request to declare that the terms of the Final Agreement prohibit TAMUK from telling prospective employers that TAMUK is involved in litigation with Lawson.

### DISCUSSION

**Approval of the Final Agreement**

TAMUK argues that its failure to obtain the approval of the governor, comptroller, and attorney general of Texas to the terms of the Final Agreement renders the agreement unenforceable.[5] TAMUK also argues the district court erred in ruling as a matter of law that all conditions precedent had been satisfied upon payment of the $60,000 warrant.

---

[5] Although the parties had been litigating the alleged breach of the Final Agreement for approximately four years, TAMUK first alleged the Final Agreement was unenforceable in a supplemental motion for summary judgment filed approximately one week before trial.

8

As support for its argument, TAMUK cites two appropriations statutes, the first of which provides:

> Payment of all judgments and settlements prosecuted by or defended by the Attorney General is subject to approval of the Attorney General as to form, content, and amount, and certification by the Attorney General that payment of such judgment or settlement is a legally enforceable obligation of the State of Texas.

Act of May 27, 1993, 73d Leg., R.S., ch. 1051, art. V, ' 65(2), 1993 Tex. Gen. Laws 4518, 5364. The second statute provides:

> Payments for settlements and judgments for claims against state agencies that are payable under Chapters 101 and 104, Texas Civil Practices and Remedies Code Annotated, as determined by the Attorney General . . . are to be paid out by the Comptroller on vouchers drawn by the Attorney General and approved by the Governor.

*Id.*, art. I-69, A.1.1(2), 1993 Tex. Gen. Laws 4518, 4599. TAMUK also cites the *first* mediation agreement, which stated that Athis mediation *agreement* is subject to the approval of the governor and comptroller of the State of Texas,@ and argues that this language was Ainexplicably@ changed in the Final Agreement to read Athe *payment* of $60,000.00 to Plaintiff is subject to approval by the Office of the Governor and State Comptroller to the terms of this agreement.@[6] (Emphasis added.)

We reject TAMUK=s arguments. First, nothing in the appropriations statutes TAMUK cites required the governor, comptroller, or attorney general to approve the *terms* of the Final Agreement.

---

[6] Although the Final Agreement provided that Lawson was to be paid $62,000, the governor and comptroller were only required to approve the $60,000 payment.

9

Both appropriations statutes merely required approval of *payment*, and it is undisputed that the $60,000 warrant was approved by the requisite state officials.  Finding nothing in the appropriations statutes that requires the governor, comptroller, or attorney general to approve the *terms* of the Final Agreement, we reject TAMUK=s contentions that the Final Agreement is unenforceable due to a failure to comply with the appropriations statutes.

TAMUK=s argument that the first mediation agreement contained a condition precedent that the *agreement* be approved by the governor and comptroller is also unconvincing.  The Final Agreement contained a merger clause that stated:  AThis compromise settlement agreement contains the entire agreement between the parties and supersedes any and all prior agreements of understandings, statements, promises or inducements contrary to the terms of this compromise settlement agreement.  This compromise settlement agreement cannot be changed or terminated orally.@  In contract cases, the Amerger doctrine,@ an analogue of the parol-evidence rule, refers to the absorption of one contract into another subsequent contract and is largely a matter of intention of the parties.  *Fish v. Tandy Corp.*, 948 S.W.2d 886, 898 (Tex. App.CFort Worth 1997, pet. denied); *see Eslon Thermoplastics v. Dynamic Sys., Inc.*, 49 S.W.3d 891, 898 (Tex. App.CAustin 2001, no pet.).  Merger occurs when the same parties to an earlier agreement later enter into a written integrated agreement covering the same subject matter.  *Fish*, 948 S.W.2d at 898.  Absent pleading and proof of ambiguity, fraud, or accident, a written instrument presumes that all the parties= earlier agreements relating to the transaction have merged into the written instrument.  *Id.*

We hold that the merger clause in the Final Agreement is valid and that the Final Agreement represents the entire agreement between the parties.  TAMUK=s argument that the language of the first

mediation agreement was Ainexplicably@ changed in the Final Agreement is not persuasive. The assistant attorney general representing TAMUK, who recommended settlement to the Office of the Attorney General and represented TAMUK during the mediation of Lawson=s lawsuit, signed the Final Agreement on behalf of TAMUK. Our review of the record reveals nothing to indicate that TAMUK=s counsel, who was intimately familiar with Lawson=s initial lawsuit and the two mediation agreements, was unaware of the content of the Final Agreement that he signed. It is clear that the Final Agreement superseded the first mediation agreement and extinguished the requirement that the entire agreement be approved by the governor and comptroller. The Final Agreement provided that Athe *payment* of $60,000.00 to Plaintiff is subject to approval,@ and this condition was satisfied.

Finally, TAMUK argues that the district court erred in ruling as a matter of law, during a hearing on the parties= motions in limine, that all conditions precedent had been satisfied and that payment of the $60,000 warrant was sufficient evidence of approval by the governor and comptroller. TAMUK has failed to show what evidence, if any, was not before the district court when it ruled on Lawson=s motions in limine. Moreover, the only two cases TAMUK cites on appeal in support of its position are easily distinguishable.[7] Finding nothing in the record or in Texas case law to support TAMUK=s position, we overrule its first issue.

---

[7] TAMUK cites *Fort Worth Cavalry Club, Inc. v. Sheppard*, 83 S.W.2d 660, 663 (Tex. 1935), for the proposition that Athe powers and duties of public officers are defined and limited by the law@ and that Apublic officers may make only such contracts for the government they represent as they are authorized by law to make.@ TAMUK also cites *State v. Steck Co.*, 236 S.W.2d 866, 869 (Tex. Civ. App.CAustin 1951, writ ref=d), for the proposition that Athe officers of the State [can] exercise only those powers conferred on them by the law of the State@ and that when this tenet is violated, Aa legal obligation against the State [is] not created by the unauthorized contract.@ However, TAMUK has failed to show any statutory

11

or constitutional violation. The appropriations statutes required approval of *payment*, and the $60,000 payment was approved in compliance with these statutes. Moreover, these cases do not support TAMUK≡s contention that the district court erred in either the manner or substance of its ruling.

**Validity of "Assistant Professor" Clause**

TAMUK next argues that it should not be required to comply with the Final Agreement, into which it voluntarily entered, because the Final Agreement required TAMUK to represent Lawson=s position as "assistant professor" when his actual position was only that of an "instructor." TAMUK argues that because complying with the Final Agreement would require TAMUK to lie about Lawson=s employment, the Final Agreement is therefore void as illegal[8] and as against public policy.

We disagree. A court can declare a contract void as illegal or as against public policy and refuse to enforce it. *Williams v. Patton*, 821 S.W.2d 141, 147-48 (Tex. 1991) (Doggett, J., concurring) (public policy); *Lewis v. Davis*, 199 S.W.2d 146, 148-49 (Tex. 1947) (illegality); *South Tex. Coll. of Law v. Texas Higher Educ. Coordinating Bd.*, 40 S.W.3d 130, 135 (Tex. App.C Austin 2000, pet. denied) (public policy). However, a contract "that could have been performed in a legal manner will not be declared void because it may have been performed in an illegal manner," *Franklin v. Jackson*, 847

_____

[8] TAMUK argues that stating Lawson=s position as "assistant professor" would violate sections 552.001(a) and 552.022(a)(2) of the Texas Government Code. *See* Tex. Gov=t Code Ann. ' 552.001(a) (West 1994) ("[I]t is the policy of this state that each person is entitled, unless otherwise expressly provided by law, at all times to complete information about the affairs of government and the official acts of public officials and employees."); *id.* ' 552.022(a)(2) (West Supp. 2004) (stating that "the name, sex, ethnicity, salary, title, and dates of employment of each employee and officer of a governmental body" are public information unless expressly confidential under other law).

S.W.2d 306, 310 (Tex. App.CEl Paso 1992, writ denied), and in examining an agreement to determine if it is contrary to public policy, the court must look for a tendency to be injurious to the public good. *Sacks v. Dallas Gold & Silver Exch., Inc.*, 720 S.W.2d 177, 180 (Tex. App.CDallas 1986, no writ).

Here, TAMUK has failed to show how referring to Lawson as an Aassistant professor@ is in any way Ainjurious to the public good,@ especially in light of Lawson=s argument that the Final Agreement Awas designed to make Dr. Lawson >whole= and, as part of that design, it effectively promoted Dr. Lawson to Assistant Professor.@[9] Furthermore, TAMUK could have complied with the terms of the contract and avoided any public policy or illegality concerns simply by retroactively promoting Lawson. Because the Final Agreement could have been performed in a legal manner by retroactively promoting Lawson, and because TAMUK has failed to show that referring to Lawson as an Aassistant professor@ is injurious to the public good, we overrule TAMUK=s second issue. *See Franklin*, 847 S.W.2d at 310 (illegality); *Sacks*, 720 S.W.2d at 180 (public policy).

**Attorney=s Fees**

In its third issue, TAMUK argues that there is no statutory basis to support the district court=s award of attorney=s fees. The district court=s final judgment, after detailing Lawson=s attorney=s fees and prejudgment interest, states:

---

**9** Lawson=s employment contract with TAMUK indicated that he would receive a promotion to assistant professor if he received his doctorate of music prior to the next contract year. According to Lawson, the completion of his doctorate was delayed as a result of his termination.

14

Plaintiff requested attorneys= fees based on Texas Civil Practice & Remedies Code, Chapters 37 and Chapter 38. Plaintiff offered evidence at trial for preparation and trial proving reasonable and necessary attorneys= fees. The Court orders Defendant to Pay Plaintiff the attorneys= fees as specified above.

First, regarding Lawson=s breach-of-contract claim, TAMUK argues that because it is not a Acorporation@ or Aindividual,@ the Texas Civil Practice and Remedies Code does not support the district court=s award of attorney=s fees. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 38.001 (West 1997). We agree and hold that section 38.001 of the Texas Civil Practice and Remedies Code does not support the district court=s award of attorney=s fees. *See Base-Seal, Inc. v. Jefferson County*, 901 S.W.2d 783, 786-87 (Tex. App.CBeaumont 1995, writ denied); *State v. Bodisch*, 775 S.W.2d 73, 76 (Tex. App.CAustin 1989, writ denied).

Next, TAMUK addresses Lawson=s request for declaratory relief under chapter 37 of the Texas Civil Practices and Remedies Code and points to a paragraph in Lawson=s proposed final judgment that was redacted by the district court:

Pursuant to Chapter 37 of the Texas Civil Practice & Remedies Code, the Court declares that the terms of the agreement on which Plaintiff has sued prohibits Defendant from telling prospective employers that Defendant is involved in litigation with Plaintiff.

TAMUK claims that Abecause [Lawson=s] claim for declaratory relief was denied,@ the declaratory judgments act does not support the award of attorney=s fees. *See* Tex. Civ. Prac. & Rem. Code Ann. ' 37.009 (West 1997) (AIn any proceeding under this chapter, the court may award costs and reasonable and necessary attorney=s fees as are equitable and just.@).

15

As part of declaratory relief, a trial court has discretion in awarding attorney=s fees Aas are equitable and just.@ *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 888 (Tex. 2000). The award of attorney=s fees is not dependent on a finding that the party Asubstantially prevailed,@ *Barshop v. Medina County Underground Water Conservation Dist.*, 925 S.W.2d 618, 638 (Tex. 1996); *West Beach Marina, Ltd. v. Erdeljac*, 94 S.W.3d 248, 270 (Tex. App.CAustin 2002, no pet.), and a trial court may award just and equitable attorney=s fees to a non-prevailing party. *State Farm Lloyds v. Borum*, 53 S.W.3d 877, 894 (Tex. App.CDallas 2001, pet. denied); *Brush v. Reata Oil & Gas Corp.*, 984 S.W.2d 720, 729 (Tex. App.CWaco 1998, pet. denied). In reviewing the trial court=s award of fees to Lawson, we must determine whether TAMUK has shown that the trial court abused its discretion by awarding attorney=s fees. *Borum*, 53 S.W.3d at 894 (citing *Bocquet v. Herring*, 972 S.W.2d 20, 21 (Tex. 1998)).

We disagree that redaction of Lawson=s request for prospective relief prevents an award of attorney=s fees under section 37.009 of the declaratory judgments act. Lawson=s request for declaratory relief included continued enforcement of the Final Agreement, which TAMUK had breached. Although a breach-of-contract cause of action can provide actual damages, only a declaratory-judgment cause of action can prospectively enforce the breached agreement. Here, the district court=s judgment provides this relief, but denies Lawson=s request to clarify the Final Agreement to prevent TAMUK from informing prospective employers that TAMUK and Lawson were in litigation. The fact that the district court refused this *discrete portion* of Lawson=s request for declaratory relief does not deprive the district court of its

16

discretion to award attorney=s fees under the other prospective declaratory relief requested.  We therefore

overrule TAMUK=s final issue.[10]

## CONCLUSION

Because we overrule all of TAMUK=s issues, we affirm the judgment of the district court.

Mack Kidd, Justice

Before Justices Kidd, B. A. Smith and Puryear

Affirmed

Filed:   January 29, 2004

---

[10] Because we overrule TAMUK=s final issue, we need not reach Lawson=s cross-point.