Opinion issued April 14,
2011



In The

Court of
Appeals

For The

First District
of Texas

————————————

NO. 01-09-00811-CV

———————————

Ricardo Gutierrez, Appellant

V.

Transtar Builders, Appellee



 



 

On Appeal from the 165th District
Court

Harris County, Texas



Trial Court Case No. 2007-68076‑A

 



 

 

MEMORANDUM OPINION

 

          This is a personal‑injury case in which the trial
court rendered summary judgment that appellant Ricardo Gutierrez take nothing
for his claims against appellee TranStar Builders.  Gutierrez brings five issues on appeal, and
we affirm.

 

Background

          TranStar was the general contractor for the construction of
the Fairdale Lane Townhomes.  The roofing
subcontractor on the project was Admiral Roofing & Sheet Metal Co.  In August 2007, Stratford Roofing &
Construction, Inc. was hired for a short-term project to repair holes left by
Admiral in the roof.  Stratford was owned
by Patrick Delaney.  Delaney hired Miguel
Hernandez to do the roofing work and had Hernandez sign a form indicating he
was an independent contractor.

          While Hernandez and his assistant Gutierrez were working on
the roof, Gutierrez slipped and fell forty feet to the ground.  Neither Hernandez nor Gutierrez was wearing
any fall‑prevention harness. 
Gutierrez sued both Stratford and TranStar for his injuries, and
TranStar filed both a traditional and no‑evidence motion for summary
judgment.  The trial court granted
TranStar’s motion on July 21, 2009. 
Gutierrez filed an amended original petition on August 17, 2009.  The trial court severed Gutierrez’s claims
against TranStar and rendered a final take‑nothing summary judgment on
August 24, 2009.

Discussion

Standard of Review

          We review the district
court’s summary judgment de novo.  See Valence
Operating Co. v. Dorsett, 164 S.W.3d 656, 661 (Tex. 2005).         When reviewing a no-evidence summary judgment, we
“review the evidence presented by the motion and response in the light most
favorable to the party against whom the summary judgment was rendered,
crediting evidence favorable to that party if reasonable jurors could, and
disregarding contrary evidence unless reasonable jurors could not.”  Mack Trucks, Inc. v. Tamez, 206 S.W.3d
572, 582 (Tex. 2006) (citing City of Keller v. Wilson, 168 S.W.3d 802,
827 (Tex. 2005); Johnson v. Brewer & Pritchard, P.C., 73 S.W.3d 193,
208 (Tex. 2002)).  The standard of review for a traditional summary
judgment is well established: (1) the movant for summary judgment has the
burden of showing that no genuine issue of material fact exists and that it is
therefore entitled to summary judgment as a matter of law; (2) in deciding
whether there is a disputed material fact issue precluding summary judgment,
evidence favorable to the nonmovant will be taken as true; and (3) every
reasonable inference must be indulged in favor of the nonmovant and any doubts
resolved in the nonmovant’s favor.  See, e.g., Nixon v. Mr. Prop. Mgmt. Co., 690 S.W.2d 546, 548–49 (Tex. 1985).

          We cannot consider issues that were
not presented to the trial court by written motion, answer, or other
response.  Tex. R. Civ. P. 166a(c). 
“[A] motion for summary judgment must itself expressly present the
grounds upon which it is made.  A motion
must stand or fall on the grounds expressly presented in the motion.”  McConnell
v. Southside Indep. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1993).  It is well-settled summary judgment law that
if a nonmovant for summary judgment (1) files an amended pleading after the
summary judgment hearing and (2) the amended pleading raises an additional
claim not mentioned in the summary‑judgment motion, then the trial court
does not err in granting the summary‑judgment motion because “the
pleadings . . . on file at the time of
the hearing, or filed thereafter and before judgment with permission of the
court, show . . . there is no genuine issue as to any material fact and the
moving party is entitled to judgment as a matter of law.”  Tex.
R. Civ. P. 166a(c); Automaker,
Inc. v. C.C.R.T. Co., 976 S.W.2d 744, 745 (Tex. App.—Houston [1st Dist.]
1998, no pet.).

Federal Preemption

          In
issue 1, Gutierrez contends the trial court erred in rendering summary judgment
based on a lack of duty because the Occupational Safety and Health Act and the
regulations adopted pursuant to the Act impose a duty of care on general
contractors to nonemployee workers and, thus, preempt Texas law.  See
29 U.S.C. §§ 651–678 (2009).  Gutierrez claims this is an issue
of first impression in Texas.

          In
his live pleading at the time the trial court rendered summary judgment, his
fifth amended original petition, Gutierrez made no claim against TranStar of a
statutory cause of action based on the Occupational Safety and Health Act.  Gutierrez’s claims were instead based on
common‑law negligence and gross negligence, with references to the Act
and to regulations of the Occupational Safety and Health Administration to
demonstrate TranStar’s alleged negligence.

          On
appeal, Gutierrez acknowledges that section 653(b)(4) of the Act provides that
“[n]othing in this chapter shall be construed . . . to enlarge or diminish or
affect in any other manner the common law or statutory rights, duties, or
liabilities of employers and employees under any law with respect to injuries,
diseases, or death of employees arising out of, or in the course of,
employment.”  Gutierrez nonetheless
argues that, even though he was not an employee of TranStar, the Act preempts
Texas common‑law negligence through the Occupational Safety and Health
Administration’s “multi‑employer work site doctrine.”[1]

          We
hold that Gutierrez’s preemption claim was not part of his live pleadings at
the time the trial court rendered summary judgment.  We also note that this Court has rejected a
similar argument in Abarca v. Scott
Morgan Residential, Inc., holding that the Occupational Safety and
Health Act does not create an implied cause of action and that regulations of
the Occupational Safety and Health Administration do not expand Texas common‑law
duties regarding independent contractors. 
Abarca, 305 S.W.3d 110, 128–29 (Tex. App.—Houston [1st
Dist.] 2009, pet. denied).  We overrule
issue 1.

          In issue 2, Gutierrez
contends the trial court erred in rendering summary judgment based on a lack of
duty because The Contract Work Hours and Safety Standards Act and the
regulations adopted pursuant to that Act impose a duty of care on general
contractors to nonemployee workers and, thus, preempt Texas law.  See
40 U.S.C. §§ 3701–3708 (2009).  As with his first issue, we hold that Gutierrez’s
preemption claim was not part of his live pleadings at the time the trial court
rendered summary judgment.  We also note
that Gutierrez has neither
adequately briefed on appeal whether the Act applies by explaining why the
contract in this case, facilitated by a loan guaranteed by the Federal Deposit
Insurance Corporation, qualifies as a contract “for work financed at least in
part by loans or grants from, or loans insured or guaranteed by, the Government
or an agency or instrumentality under any federal law providing wage standards
for the work,” nor has he argued that the contract is not subject to an
exception in the Act.  See id.
§ 3701(b)(1)(B)(iii), (3)(A); Tex.
R. App. P. 38.1(i) (requiring appellant’s brief to contain clear and
concise argument for the contentions made, with appropriate citations to
authority and record).  We overrule
issue 2.

Contractual
duty

          In
issue 3, Gutierrez contends the trial court erred in rendering summary judgment
because TranStar was contractually obligated to comply with all governmental
regulations and codes.  In the trial
court and on appeal, Gutierrez relies on sections 10.2.1 and 10.2.2 of the
contract[2]:

§ 10.2.1  The Contractor shall take
reasonable precautions for safety of, and shall provide reasonable protection
to prevent damage, injury or loss to

.1  employees on the Work and other persons who
may be affected thereby;

 . . . .

§ 10.2.2  The Contractor shall
comply with and give notices required by applicable laws, statutes, ordinances,
codes, rules and regulations, and lawful orders of public authorities bearing
on safety or persons or property or their protection from damage, injury or
loss.

 

In addition, the contract specifically disclaims creating a contractual
relationship between the contractor and any subcontractors.[3]

          Gutierrez’s accident
occurred on August 25, 2007.  The
contract, however, was dated February 10, 2008. 
On appeal, Gutierrez makes two arguments why the 2008 contract applied
retroactively to his 2007 accident.

          First, Gutierrez suggests in
his appellate brief, without substantive analysis, that the date of the 2008 contract
related back to 2007.  This argument is
not supported by the contract language.

§ 4.1  The Date of Commencement of
the Work shall be the date of this Agreement, unless a different date is stated
below or provision is made for the date to be fixed in a notice to proceed issued
by the Owner. . . .  The work on the Project began in 2007, and this Contract is to cover
the work that will be done on the Project from the date of this Contract and
forward.  The Date of Commencement shall
be the date of this Contract.

 

(italicized portion is
handwritten.)  The handwritten portion of
section 4.1 uses the future tense, stating that “this Contract is to cover the
work that will be done on the Project from the date of this Contract and
forward.”  The reference to the previous
work begun in 2007 served to separate that portion of the Project from the work
performed under the 2008 contract.

          Second,
Gutierrez argues that the language of the 2008 contract, which provides
that it supersedes any prior agreement, controls prior dealings under the old
contract.[4]  Gutierrez acknowledges that the “old
contract” is not part of the record, but he nonetheless argues that the prior
contract merged into the 2008 contract and thus contractually obligated
TranStar to comply with all governmental regulations and codes.  Gutierrez cites one case, Texas A & M
University–Kingsville v. Lawson, for the general proposition that merger
occurs when the same parties to an earlier agreement later enter into a written
integrated agreement covering the same subject matter.  Lawson,
127 S.W.3d 866, 872 (Tex App.—Austin 2004, pet. denied).  Nothing in the Lawson case, however, holds that the merger doctrine requires
retroactive application of the later integrated agreement to the earlier
agreement.

          We overrule issue 3.[5]

Actual
Control

          In issue 4, Gutierrez
contends the trial court erred in rendering summary judgment because the
summary‑judgment evidence raised a material fact question concerning
whether TranStar exercised actual control over Gutierrez’s work.[6]  Generally, a general contractor does
not have a duty to see that a subcontractor performs work in a safe
manner.  Abarca, 305 S.W.3d at 126 (citing Redinger v. Living, Inc.,
689 S.W.2d 415, 418 (Tex. 1985)). 
However, a limited duty arises if a general contractor retains control
over a subcontractor’s methods of work or operative details to the point that
the subcontractor is not entirely free to do the work in his own way.  Abarca,
305 S.W.3d at 126 (citing Koch Refining Co. v. Chapa, 11 S.W.3d
153, 154 (Tex. 1999)).  The general
contractor’s “duty of reasonable care is commensurate with the control it
retains” over the subcontractor.  Hoechst-Celanese
Corp. v. Mendez, 967 S.W.2d 354, 355 (Tex. 1998).  General supervisory control that does not
relate to the activity causing the injury is not sufficient to create a
duty.  Abarca, 305 S.W.3d at 126. 
However, “an employer who gives on-site orders or provides detailed
instructions on the means or methods to carry out a work order owes the
independent contractor employee a duty of reasonable care to protect him from
work-related hazards.”  Hoescht-Celanese,
967 S.W.2d at 357.

          To be liable because it exercised
actual control, TranStar must have had the right to control the means, methods,
or details of the independent contractor’s work to the extent that the
independent contractor was not entirely free to do the work his own way.  See Abarca,
305 S.W.3d at 124 (citing Ellwood Tex. Forge Corp. v. Jones, 214 S.W.3d 693, 700 (Tex.
App.—Houston [14th Dist.] 2007, pet. denied)).  The control must relate to the injury the
negligence causes.  Abarca, 305 S.W.3d at 124. 
It is not enough that the general contractor has the right to order the
work to stop and start or to inspect progress or receive reports.  Id. 
Nor is it enough to recommend a safe manner for the independent
contractor’s employees to perform the work. 
Id.

          On appeal, Gutierrez
points to the following as evidence of TranStar’s actual control: (1) Josh
Hinkle, TranStar’s job superintendent, was aware that Gutierrez was working on
the roof without a safety harness and was present on the job site at the time
of the injury; (2) Hinkle was aware, or should have been aware, that the
Admiral roofing crew that had previously worked on the roof used safety harnesses;
(3) Hinkle instructed Gutierrez to fix holes on the roof; (4) Hinkle had
authority from TranStar to stop a subcontractor if he saw a safety problem; (5)
on a separate occasion Hinkle stopped a framing subcontractor when he felt the
work was not being done according to the construction drawings; (6) a different
TranStar superintendent requested an electrical subcontractor to fix exposed
electrical wires; and (7) Hinkle instructed Patrick Delaney, Gutierrez’s employer,
“Hey, the second layer [of felt] is not on there.  We have a storm coming in.  Let’s get the second layer on here and close
up these holes.”

          Gutierrez contends that the
conduct of the general contractor in Lee
Lewis Construction, Inc. v. Harrison is exactly like TranStar’s
conduct.  70 S.W.3d 778 (Tex. 2001).  In Lew
Lewis, there was testimony (1) that the general contractor assigned a job
superintendent to routinely inspect the job site and see that the
subcontractors and their employees utilized fall‑protection equipment,
(2) that the job superintendent personally witnessed and approved the fall‑protection
equipment, including the lanyard system, and (3) that the job superintendent
knew and did not object to a subcontractor’s employee using a bosun’s chair
without an independent lifeline.  Id. at 784.  The supreme court held that this evidence
constituted more than a scintilla of evidence that the general contractor
retained the right to control fall‑protection systems on the job.  Id.

          In General Electric Co. v. Moritz, the supreme court clarified that Lee Lewis held that a defendant’s duty
is commensurate with the control the defendant retains over the independent
contractor's work; thus, the retained control must relate directly to an
activity from which the injury arose.  Gen. Elec. Co., 257 S.W.3d 211, 214
(Tex. 2008).  The supreme court further
held that when a defendant hires an independent contractor to come on premises
and perform work as it sees fit, the defendant may reasonably expect the
contractor to instruct its own employees on the safe means and manner of doing
so.  Id.
at 218.  Regardless of whether an
independent contractor acts prudently, the defendant has no general duty to
warn.  Id.

          Reviewing the evidence presented by
the motion and response in the light most favorable to Gutierrez, we conclude that he has shown no evidence that TranStar retained any control over Stratford
Roofing or its employees that related directly to Gutierrez’s fall.  While TranStar could have instructed
Gutierrez to wear a safety harness, it had no duty to do so.  We overrule issue 4.

Negligent Hiring

          In issue 5,
Gutierrez contends the trial court erred in rendering summary judgment because
the summary‑judgment evidence raises a question of material fact
concerning negligent hiring.  Negligence
in hiring or retention requires that the employer or independent contractor’s failure
to investigate, screen, or supervise proximately caused the injuries the
plaintiff alleges.  See Fifth Club, Inc. v.
Ramirez, 196 S.W.3d 788, 796 (Tex. 2006).

          TranStar
moved for summary judgment on Gutierrez’s negligent‑hiring claim on the ground
that Stratford was not Gutierrez’s employer. 
Instead, TranStar provided summary‑judgment evidence in the form
of a Texas Department of Insurance “joint agreement to affirm independent
relationship for certain building and construction workers” form that Stratford
hired Miguel Hernandez as an independent contractor.  TranStar also provided summary‑judgment
evidence that Hernandez was Gutierrez’s employer.  Gutierrez’s response to the motion for
summary judgment did not address TranStar’s ground, but instead continued to
argue that TranStar was negligent in hiring Stratford and was therefore “liable
for any negligence attributable to Stratford.”

          On
appeal, Gutierrez does not address TranStar’s ground, but again argues
generally that TranStar was negligent in hiring Stratford without any
discussion of Hernandez’s status as an independent contractor.  To the extent that Gutierrez has raised an
issue on appeal regarding the trial court granting TranStar’s motion for
summary judgment on negligent hiring, we hold that Gutierrez has not adequately briefed an
argument.  See Tex. R. App. P. 38.1(i).  We therefore overrule issue 5.

Conclusion

          We
affirm the trial court’s summary judgment.

          

 

                                                                   Jim Sharp

                                                                   Justice


 

Panel
consists of Justices Keyes, Sharp, and Massengale.











[1]           See 29 C.F.R. § 1910.12(a) (2010) (“The standards
prescribed in part 1926 of this chapter are adopted as occupational safety and
health standards under section 6 of the Act and shall apply, according to the
provisions thereof, to every employment and place of employment of every
employee engaged in construction work.  Each
employer shall protect the employment and places of employment of each of his
employees engaged in construction work by complying with the appropriate
standards prescribed in this paragraph.”). 
Employers are required under the Act to comply with standards
promulgated under the Act.  29 U.S.C. § 654(a)(2) (2009).

 





[2]           The
contract was the American Institute of Architects AIA Documents A103 –2007
(Standard Form of Agreement Between Owner and Contractor) and A201 – 2007
(General Conditions of the Contract for Construction).

 





[3]           “The
Contract Documents shall not be construed to create a contractual relationship
of any kind (1) between the Contractor and the Architect or the Architect’s
consultants, (2) between the Owner and a Subcontractor or a Sub‑subcontractor,
(3) between the Owner and the Architect or the Architect’s consultants or (4)
between any persons other than the Owner and the Contractor.”  Contract § 1.1.2.





[4]           We
assume Gutierrez is referring to the
integration clause in article 1, which provides the “Contract represents the
entire and integrated agreement between the parties hereto and supersedes prior
negotiations, representations or agreement, either written or oral.  If anything in the other Contract Documents,
other than a Modification, is inconsistent with this Agreement, this Agreement
shall govern.”

 





[5]           Gutierrez does not cite to any cases interpreting
the AIA form contract documents.





 

[6]           Gutierrez lists five issues at the beginning of his
brief, but only three in the argument portion of the brief.  We will treat the argument portion of the
brief as raising issues 4 and 5 as they are stated in the initial issues
presented.