# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-10-00211-CV

**Bob T. Patterson, Appellant**

**v.**

**Perry Pritchard, Appellee**

### FROM THE DISTRICT COURT OF LLANO COUNTY, 424TH JUDICIAL DISTRICT
### NO. 16134, HONORABLE PAUL DAVIS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

The dispositive issue in this appeal is whether an agreement between appellant Bob T. Patterson and appellee Perry Pritchard was illegal on its face as a matter of law. Pritchard moved for traditional and no-evidence summary judgment on all of Patterson's causes of action on the ground that the agreement was made for the unauthorized practice of law and, therefore, illegal and unenforceable. *See* Tex. R. Civ. P. 166a(c), (i). Without specifying the basis for its ruling, the trial court granted Pritchard's motion.

On appeal, Patterson challenges the trial court's summary judgment ruling. In four issues, he urges: (i) Pritchard, as the party with the burden to prove his affirmative defense of illegality, was not entitled to no-evidence summary judgment; (ii) Pritchard failed to prove all elements of his affirmative defense of illegality to be entitled to traditional summary judgment; (iii) the trial court erred in considering and granting oral objections to Patterson's summary judgment

evidence; and (iv) in any event, the trial court erred in granting summary judgment against Patterson's fraud, unjust enrichment, quantum meruit and constructive trust claims. Because we conclude that the trial court erred in granting summary judgment, we reverse the trial court's final summary judgment and remand the case to the trial court for further proceedings consistent with this opinion.

## BACKGROUND

The agreement at issue concerned real property that Pritchard sold in 2002 to third parties. The third parties executed promissory notes for the purchase of the property but failed to make payments owed under the notes. Pritchard thereafter asked Patterson for his assistance to recover the monies owed under the notes or the property, and the parties entered into an agreement in November 2005. The agreement provided in its entirety:

> AGREEMENT signed and dated, this the 22nd day of November, 2005 between Bob T. Patterson ("Patterson") of Bastrop County, Texas and Perry Pritchard ("Pritchard") of Mart, Texas wherein the parties agree that Patterson has been requested by Pritchard to obtain payment of the Notes attached hereto as Exhibit A or to obtain a return of the underlying collateral property to Pritchard. [1]
>
> As compensation to Patterson for his services under this agreement, Pritchard agrees to pay to Patterson fifty-one percent (51%) of the monies collected, or in the event of the return of the collateral property a fifty-one percent (51%) interest in the ownership of the property. Compensation due hereunder will be made within ten (10) days of the collection or of the repossession of the title to the property.
>
> Pritchard shall have the right of a sixty-day (60) written notice to terminate this agreement if within three (3) years from this date if there is not a suit pending in a State or Federal court on Pritchard's behalf to recover the collateral property. Notice

---

[1] The agreement also includes a hand-written sentence at the end of the first paragraph, but it is not legible.

of the termination to be sent by United States registered mail to Patterson at the address listed below.

Patterson shall have the right of a sixty-day (60) written notice to cancel this agreement if within the three (3) years he determines that there are no reasonable sufficient legal grounds to anticipate recovering the monies or the property. Notice of the termination to be sent by United States registered mail to Pritchard at the address listed below.

Expenses incurred by Patterson, unless agreed to by Pritchard prior to their disbursement, shall be the sole responsibility of Patterson. Any expenses that are to be reimbursed by Pritchard to Patterson, or his designee, will be paid within ten-days (10) of their disbursement.

Other than in respects to the items stated in this agreement, there shall be no liability of either party to the other, or to any third party. Any disputes will be settled by a Board of Arbitrators under the laws of the State of Texas.

At the same time that the parties signed the agreement, Pritchard signed a limited power of attorney appointing Patterson "as lawful attorney for him" for the "[c]ollection of the note . . . or foreclosure on the Note and the collection of the underlying collateral property."[2] Patterson was not and never has been an attorney.

---

[2] The power of attorney further provided:

Pritchard hereby gives and grants unto said Patterson the full power and authority to do and perform all and every act and to do what so ever deemed as necessary to be done in and about the specific and limited premises as set forth above as fully to all intents and purposes as might or could be done if personally present with full power hereby ratifying and confirming all that said attorney shall lawfully do or cause to be done by virtue hereof.

The Limited Power of Attorney shall expire in three-years, if not renewed; however, if litigation has been filed in any State or Federal Court of law in respects to the collection or foreclosure of the Note, the Limited Power of Attorney shall be automatically extended until the Court, or any Appeals Court, has made a final ruling in respects to the collection or foreclosure.

3

Patterson brought this suit in 2008. In his pleadings, Patterson alleged: "In exchange for Plaintiff's efforts, expense and attorney's fees to be expended, Pritchard agreed to pay Plaintiff fifty-one percent (51%) of the monies collected, or to grant Plaintiff a fifty-one percent (51%) interest in the ownership of the real property recovered." Patterson alleged that he fully performed under the terms of the agreement and that Pritchard breached the agreement by refusing to convey an interest in the property. Patterson stated that he hired an attorney who filed suit on behalf of Pritchard and that, at the conclusion of the litigation, Pritchard recovered the property at issue but refused to convey any interest in the property to Patterson. Patterson sought specific performance of the agreement, a constructive trust, an accounting, and damages. As to his request for a constructive trust, Patterson alleged that Pritchard "acted inequitably with the intent to take Plaintiff's services" without compensation and "has been unjustly enriched by his inequitable conduct."

In February 2010, Pritchard filed a motion for summary judgment. At the same time, he amended his answer to assert illegality as an affirmative defense. Although he moved for no-evidence and traditional summary judgment, the sole ground to support his motion was that the agreement was "an unenforceable contract made for the illegal practice of law." He contended that the agreement on its face was a "contract for legal services by a nonlawyer and any work done pursuant to the contract would constitute the unauthorized practice of law." Pritchard asserted that, without a valid contract, Patterson's "breach of contract claim and related equitable claims for a constructive trust, unjust enrichment, and for an accounting all must fail."

4

Pritchard filed summary judgment evidence to support his motion. His evidence included a copy of the agreement, the power of attorney, correspondence from Pritchard's attorney in this suit to Karl Quebe, the attorney who represented Pritchard in the underlying suit in which Pritchard recovered the property, and documents from the underlying suit. The documents included affidavits from Quebe and Pritchard, the settlement agreement, the agreed motion to dismiss and order of dismissal, and a transcript of the oral deposition of Pritchard.

Patterson responded to the motion with evidence and amended his petition. In his amended petition, Patterson maintained his previously asserted claims and added fraud, breach of a joint venture agreement between the parties to develop property, and breach of fiduciary duty. His evidence in response to the summary judgment motion included affidavits of Patterson and Quebe. Patterson averred concerning his negotiation and dealings with Pritchard and his management of the property on Pritchard's behalf. Patterson averred that he had an agreement with Quebe to compensate Quebe, that he had paid expenses in the underlying suit, that he managed the property and "put it in condition to rent or sell it," and that he had "paid at least $1000 per month in property taxes beginning in October, 2008, and continuing to date." He also averred that he was out of pocket expenses for insurance on the property, lawn mowing, clean up, and survey work. As to his relationship with Pritchard, he averred that he does "not act as an attorney for anyone" and he has "never 'represented' Mr. Pritchard."

Quebe averred that he attended a meeting with Patterson and Pritchard in November 2005, at which, "Pritchard was told that [Quebe] was a lawyer who would be handling the suit referenced in the [agreement]" and Pritchard signed the agreement. Quebe also averred concerning

5

the resolution of the underlying suit and his representation of Pritchard in that suit. Quebe filed the suit on Pritchard's behalf and, among other pleadings, a motion for summary judgment with an affidavit by Pritchard. In the affidavit, Pritchard averred that Quebe represented him. Quebe also represented Pritchard at Pritchard's deposition and at the mediation in which a settlement was reached. The agreement and pleadings from the underlying suit were attached to Quebe's affidavit.

After a hearing, the trial court granted Pritchard's motion for summary judgment. The trial court did not specify the basis for its ruling. The trial court also sustained objections to the admissibility of certain paragraphs of Patterson's affidavit to the extent those paragraphs varied the terms of the agreement and a paragraph of Patterson's affidavit in which he averred that Pritchard relied upon Quebe to advise him concerning the underlying suit. This appeal followed.

## ANALYSIS

### *Standard of Review*

We review a trial court's summary judgment rulings de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). To prevail on a traditional motion for summary judgment, the movant must show that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c). A movant seeking a no-evidence summary judgment must assert that "there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial." Tex. R. Civ. P. 166a(i). "The court must grant the motion unless the respondent produces summary judgment evidence raising a genuine issue of material fact" on the challenged element. *Id*.; *see Mack Trucks, Inc. v. Tamez*, 206 S.W.3d 572, 581-82 (Tex. 2006). When reviewing a summary judgment, we must

take evidence favorable to the nonmovant as true, indulge every reasonable inference in favor of the nonmovant, and resolve any doubts in the nonmovant's favor. *Mack Trucks*, 206 S.W.3d at 582; *Dorsett*, 164 S.W.3d at 661. If the trial court does not specify the grounds for its summary judgment, we must affirm the summary judgment "if any of the theories presented to the trial court and preserved for appellate review are meritorious." *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 216 (Tex. 2003).

Patterson's issues also raise matters of contract construction. When a court concludes that contract language can be given a "'certain or definite legal meaning,'" then the language is not ambiguous, and the court "'will construe the contract as a matter of law.'" *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005) (quoting *Coker v. Coker*, 650 S.W.2d 391, 393 (Tex. 1983)). "Contract terms are given their plain, ordinary, and generally accepted meanings unless the contract itself shows them to be used in a technical or different sense." *Dorsett*, 164 S.W.3d at 662.

### Did the trial court err in granting no-evidence summary judgment?

As an initial matter, Patterson urges that, to the extent the trial court granted a no-evidence summary judgment, that the trial court erred because Pritchard's motion challenging the validity of the agreement was based upon his affirmative defense of illegality. In the no-evidence portion of his motion for summary judgment, Pritchard claimed that there was no evidence that the agreement was valid and enforceable. Because contracts are presumed legal, however, a party asserting illegality has the burden of proof. *See Signal Peak Enterprs. of Tex., Inc. v. Bettina Invs., Inc.*, 138 S.W.3d 915, 920-21 (Tex. App.—Dallas 2004, pet. struck) (presumption in favor of legality

7

of contracts). As the party with the burden to prove illegality, Pritchard was not entitled to a no-evidence summary judgment. *See* Tex. R. Civ. P. 94, 166a(i); *Thomas v. Omar Invs., Inc.*, 156 S.W.3d 681, 685 (Tex. App.—Dallas 2005, no pet.) (no-evidence summary judgment not available to a defendant with respect to affirmative defenses because defendant has the burden of proof); *Nowak v. DAS Inv. Corp.*, 110 S.W.3d 677, 680-81 (Tex. App.—Houston [14th Dist.] 2003, no pet.) (same). We, therefore, conclude that the trial court erred in granting a no-evidence summary judgment in favor of Pritchard.

**Did the trial court err in granting traditional summary judgment?**

To be entitled to traditional summary judgment, Pritchard had to conclusively establish his affirmative defense of illegality. *See* Tex. R. Civ. P. 166a(c); *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d 842, 846 (Tex. 2005); *Nowak*, 110 S.W.3d at 680 ("Only when a party conclusively proves every element of its affirmative defense is it entitled to summary judgment."). In his summary judgment motion, Pritchard challenged the agreement based solely on the face of the agreement, characterizing the agreement as an illegal "contingency fee" agreement made for the unauthorized practice of law.

A court can declare a contract void as illegal and refuse to enforce it. *See Lewis v. Davis*, 199 S.W.2d 146, 148-49 (Tex. 1947). But, when two constructions of a contract are possible, courts must apply the construction that does not result in a violation of the law. *See id.* at 149; *Ross v. Union Carbide Corp.*, 296 S.W.3d 206, 218 (Tex. App.—Houston [14th Dist.] 2009, pet. denied); *Gupta v. Eastern Idaho Tumor Inst., Inc.*, 140 S.W.3d 747, 752 (Tex. App.—Houston [14th Dist.] 2004, pet. denied) (generally "contract to do a thing which cannot be performed without

8

a violation of the law is unenforceable" but "courts give preference to the construction that does not violate the law"); *Signal Peak Enters. of Tex., Inc.*, 138 S.W.3d at 920-21. Pritchard then had to conclusively establish that the agreement on its face could not have been performed in a legal manner to be entitled to summary judgment. *See Rubio*, 185 S.W.3d at 846; *Lewis*, 199 S.W.2d at 148-49; *see also Texas A&M Univ. v. Lawson*, 127 S.W.3d 866, 873-74 (Tex. App.—Austin 2004, pet. denied) (agreement not illegal or void "that could have been performed in a legal manner").[3]

The legislature has defined the "practice of law" to mean "the preparation of a pleading or other document incident to an action or special proceeding or the management of the action or proceeding on behalf of a client before a judge in court as well as a service rendered out of court, including the giving of advice or the rendering of any service requiring the use of legal skill or knowledge, such as preparing a will, contract, or other instrument, the legal effect of which under the facts and conclusions involved must be carefully determined." Tex. Gov't Code Ann. § 81.101(a) (West 2005); *see also* Tex. Penal Code Ann. § 38.123 (West 2011) (offense of unauthorized practice of law defined); *Brown v. Unauthorized Practice of Law Comm.*, 742 S.W.2d 34, 41 (Tex. App.—Dallas 1987, writ denied) ("The practice of law embraces in general all advice to clients and all action taken for them in matters connected with the law."). The legislature's definition is "not exclusive and does not deprive the judicial branch of the power and authority under both this chapter and the adjudicated cases to determine whether other services and

---

[3] Pritchard did not attempt to show that any actual action taken by Patterson constituted the unauthorized practice of law. *See* Tex. Gov't Code Ann. § 81.101(a) (West 2005); *Plano Surgery Ctr. v. New You*, 265 S.W.3d 496, 501 (Tex. App.—Dallas 2008, no pet.) ("When the illegality does not appear on the face of the contract, it will not be held illegal and thus void unless the facts showing its illegality are before the court.").

9

acts not enumerated may constitute the practice of law." Tex. Gov't Code Ann. § 81.101(b) (West 2005); *see Unauthorized Practice Comm. v. Cortez*, 692 S.W.2d 47, 51 (Tex. 1985) (courts have "inherent power" to determine whether activities constitute the unauthorized practice of law on a "case by case basis").

If possible, we are required to apply a construction of the agreement that does not violate the law and, here, the language can be read in a way that does not require a violation of the law. *See Lewis*, 199 S.W.2d at 149. The agreement states: "[T]he parties agree that Patterson has been requested by Pritchard to obtain payment on the Notes . . . or to obtain a return of the underlying collateral property to Pritchard." The plain and ordinary meaning of this language does not require Patterson to prepare "a pleading or other document incident to an action or special proceeding" or to manage "the action or proceeding on behalf of [Pritchard] before a judge in court" or otherwise personally to render "any service requiring the use of legal skill or knowledge." *See* Tex. Gov't Code Ann. § 81.101(a); *Dorsett*, 164 S.W.3d at 662; *cf.* Tex. Fin. Code Ann. § 392.001(6) (Tex. 2006) (definition of debt collector not limited to an attorney); *Crain v. Unauthorized Practice of Law Comm.*, 11 S.W.3d 328, 333 (Tex. App.—Houston [1st Dist.] 1999, pet. denied) (non-attorney collection agency may not prepare and file mechanic's liens or lien affidavits on others' behalf).

On its face, the agreement also did not preclude Patterson from hiring an attorney to provide legal services to Pritchard to recover the property. The agreement did provide, however, that Patterson would be responsible for "expenses incurred." In the event that Patterson hired an attorney then, the parties agreed that he would be responsible for the attorney's fees incurred. *See*

*Anglo-Dutch Petroleum Int'l, Inc. v. Haskell*, 193 S.W.3d 87, 104-05 (Tex. App.—Houston [1st Dist.] 2006, pet. denied) (litigation funding agreements are legal); *see also* Tex. Disciplinary R. Prof'l Conduct 1.08(e) (attorney's fees may be paid by non-client as long as client consents, no interference with attorney's independent judgment or attorney-client relationship, and confidential information protected); *cf. Unauthorized Practice of Law Comm. v. American Home Assurance*, 261 S.W.3d 24, 35 (Tex. 2008) (insurer does not engage in unauthorized practice of law by retaining attorney to provide its insured a defense); *Plains Steel Bldg., Inc. v. Mathis*, 446 S.W.2d 717, 719 (Tex. Civ. App.—Amarillo 1969, writ ref'd n.r.e.) (contract not illegal even though plaintiff not master electrician who could personally obtain permit required to undertake contract work).

Further, in the event that Patterson hired an attorney to represent Pritchard, nothing in the agreement gave Patterson the right to control the relationship between Pritchard and the attorney or required the attorney to consult with or otherwise obtain Patterson's consent before taking action on behalf of Pritchard. *See* Tex. Disciplinary R. Prof'l Conduct 5.04(c) ("A lawyer shall not permit a person who . . . pays the lawyer to render legal services for another to direct or regulate the lawyer's professional judgment in rendering such legal services.").

As to the clauses addressing the parties' respective rights to terminate the agreement, Patterson had the right to terminate the agreement if he determined that there "[were] no reasonable sufficient legal grounds to anticipate recovering the monies or the property." The plain meaning of this clause allowed Patterson's assessment of legal strength for his own personal evaluation, not necessarily for advising Pritchard, and his right to terminate was not conditioned on advising or otherwise rendering any service to Pritchard. The clause allowing Pritchard to terminate was

11

conditioned on whether a suit had been filed on his behalf within three years. This clause similarly did not require Patterson to provide legal advice to Pritchard or personally to represent Pritchard in the referenced suit but gave Pritchard the right to terminate based upon whether an objective event had occurred within a set period of time. On their face then, the termination clauses did not require Patterson to take an action that would constitute the unauthorized practice of law. *See* Tex. Gov't Code Ann. § 81.101(a); *Rubio*, 185 S.W.3d at 846; *Lewis*, 199 S.W.2d at 149; *Lawson*, 127 S.W.3d at 873-74.

Pritchard focuses on language in the power of attorney that Pritchard appointed Patterson "as lawful attorney for him" for "[c]ollection of the note . . . or foreclosure on the Note and the collection of the underlying collateral property." *See Jones v. Kelley*, 614 S.W.2d 95, 98 (Tex. 1981) ("The general rule is that separate instruments or contracts executed at the same time, for the same purpose, and in the course of the same transaction are to be considered as one instrument, and are to be read and construed together."). Pritchard urges that collection of the note and foreclosure are legal services. The "limited power of attorney," however, expressly authorized Patterson only to take actions on Pritchard's behalf that Patterson "shall lawfully do or cause to be done by virtue hereof." Further, a power of attorney generally grants "someone authority to act as agent or attorney-in-fact for the grantor." Black's Law Dictionary 1290 (9th ed. 2009); *see Harkins v. Murphy & Bolanz*, 112 S.W. 136, 138 (Tex. Civ. App.—Dallas 1908, writ dism'd) (power of attorney does not authorize one to act as attorney-at-law); *cf.* Tex. Estates Code Ann. §§ 491(1) (durable power of attorney allows attorney in fact to "demand, receive, and obtain by litigation, action, or otherwise any money or other thing of value to which the principal is, may become, or may

claim to be entitled"), 500 (West 2010) (durable power of attorney relating to claims and litigation). Because non-lawyers may serve as agents or attorneys in fact, actions taken by Patterson pursuant to the limited power of attorney would not necessarily have constituted the unauthorized practice of law. *See Lewis*, 199 S.W.2d at 149.

Pritchard relies upon *Newton v. Delespine*, No. 12-05-00113-CV, 2006 Tex. App. LEXIS 10361 (Tex. App.—Tyler 2006, pet. denied) (mem. op.), to support his proposition that the agreement was an unenforceable contract for the illegal practice of law. In that case, the issue was the legality of an agreement between two inmates, Newton and Delespine. *Id*. at *1-2. Pursuant to the agreement, Newton agreed to provide "professional advice and management of legal services" in two probate matters and litigation arising from those matters in exchange for compensation. *Id*. The agreement stated that "[a]ttorney's fees are contingent and percentage of recovery dependant [sic] on size of estate." *Id*. at *8. The contract also empowered Newton to "advise and work with an attorney" on Delespine's behalf and "for said attorney to file such legal actions *as may be deemed advisable by* [Newton]*, and said attorney*." *Id*. at *8-9 (emphasis added). Delespine further gave Newton a power of attorney specifically "for the professional management of legal services." *Id*. at *9.

*Newton* is distinguishable from our facts. Although that appeal also was from a summary judgment ruling that the contract was not enforceable, the summary judgment evidence there showed that, pursuant to the parties' agreement, "Newton did legal research and prepared legal documents involving the use of legal skill and knowledge" and that he "advised Delespine regarding a will contest . . . and regarding his original criminal conviction." *Id*. at *11. Further, Newton did

13

not dispute that he had provided legal services but argued that his actions were justified because he acted pursuant to the power of attorney. Our sister court disagreed, concluding that the "authorization to act as an attorney in fact under a power of attorney is not an authorization to practice law." *Id*. at *15. Applying our sister court's analysis here, Pritchard's signing the power of attorney does not amount to an authorization for Patterson to practice law but could be construed as authorizing Patterson to act as Pritchard's agent concerning the note and the property in a way that did not require Patterson to commit the unauthorized practice of law. Moreover, there was no evidence that Patterson actually provided legal services to Pritchard[4] and, in contrast with the contract between Newton and Delespine, the agreement here did not require Patterson's consent or advice before Quebe took action on behalf of Pritchard in the underlying suit.

Because the agreement is capable of being construed in a way that would allow the parties to perform their obligations in a legal way, Pritchard failed in his burden to conclusively establish the agreement was illegal on its face as a matter of law. *See Lewis*, 199 S.W.2d at 149. We, therefore, conclude that the trial court erred in granting traditional summary judgment in favor of Pritchard.

---

[4] *See supra* note 3.

14

**CONCLUSION**

Because we conclude that the trial court erred in granting summary judgment, we reverse the trial court's final summary judgment and remand the case to the trial court for further proceedings consistent with this opinion.[5]

_____

Melissa Goodwin, Justice

Before Justices Henson, Rose and Goodwin;
    Concurring and Dissenting Opinion by Justice Henson

Reversed and Remanded

Filed:   August 4, 2011

---

[5] Given our conclusion that the trial court erred in granting summary judgment, we need not address Patterson's remaining issues of (i) whether Patterson's causes of action other than breach of contract survived even if the trial court correctly granted summary judgment on Patterson's breach of contract claim and (ii) whether the trial court erred in granting objections to Patterson's affidavit. *See* Tex R. App. P. 47.1.